The GENERAL CONTRACTING & TRADING CO., LLC, Plaintiff, Appellee,

v.

INTERPOLE, INC., Defendant, Appellee,

v.

TRANSAMERICAN STEAMSHIP CORPORATION, Third–Party Defendant, Appellant.

No. 91–1203.

United States Court of Appeals, First Circuit.

Heard June 3, 1991.

Decided July 31, 1991.

Edward C. Radzik with whom Richard E. Repetto, Donovan Parry Walsh & Repetto, New York City, Gary S. Lenehan, and Brennan Caron & Lenehan, P.A., were on brief, Manchester, N.H., for third-party defendant, appellant.

Warren C. Nighswander with whom Sulloway Hollis & Soden, was on brief, Concord, N.H., for defendant, appellee Interpole, Inc.

Before BREYER, Chief Judge,
SELYA, Circuit Judge, and PETTINE,*
Senior District Judge.

SELYA, Circuit Judge.

We revisit today a shopworn fracas involving the appellant, Transamerican Steamship Corporation (Trastco), and appellee Interpole, Inc. When the litigation first appeared in our venue, we rebuffed Trastco's efforts to set aside a default judgment which had been entered against it in Interpole's favor, but remanded the cause for the sole purpose of determining whether the district court, at the time it entered the default judgment, had acquired jurisdiction over Trastco's corporate persona. *General Contracting & Trading Co. v. Interpole, Inc.*, 899 F.2d 109 (1st Cir. 1990) (*Interpole I*). Following discovery and an evidentiary hearing, the United States District Court for the District of New Hampshire decided that it had jurisdiction and, therefore, refused to grant Trastco's Rule 60(b)(4) motion.[1] Although we travel a different analytical route than the district court, we arrive at the same destination. Accordingly, we uphold the court's assertion of jurisdiction and reject Trastco's renewed appeal.

## I. BACKGROUND

We eschew exegetic treatment of the historical antecedents of this litigation, referring those who may hunger for greater detail to our earlier opinion, *Interpole I*, 899 F.2d at 110–11. For present purposes, it suffices to remind the reader that, in 1980, General Contracting & Trading Co. (GCT) ordered 4,500 wooden utility poles from Interpole, a New Hampshire corporation. The poles were produced for Interpole in the southern United States and sent by the manufacturer to Mobile, Alabama for transshipment to GCT in Oman. Interpole contracted with Trastco to transport the poles by sea from Mobile to Mina Qaboos. The voyage was less than a smashing success.

In May 1985, GCT sued Interpole in New Hampshire's federal district court seeking damages associated with the delayed delivery of its order (Suit No. 1). Interpole filed a third-party complaint for indemnity against Trastco. Trastco failed to respond, a failure that led, eventually, to the entry of a default. When Trastco finally bestirred itself and tried to set aside the default, the district court refused to grant the requested relief. Trastco then brought a separate suit against Interpole in the same federal district court, charging fraud and misrepresentation in connection with the same overall transaction (Suit No. 2).

To truncate the tale of the two suits, we note that, after Interpole had confessed to a judgment favoring GCT in Suit No. 1, the district court consolidated the two cases for a hearing on damages. Before this hearing was held, however, Interpole and Trastco settled Suit No. 2 for $30,000. The assessment-of-damages proceeding was, therefore, limited to the third-party complaint in

---

* Of the District of Rhode Island, sitting by designation.

1. Fed.R.Civ.P. 60(b)(4) provides in pertinent part that, on motion, a district court "may relieve a party ... from a final judgment ... [if] the judgment is void." As we observed in *Interpole I*, 899 F.2d at 114, a judgment "entered by a court which lacks personal jurisdiction over the defendant[ ] is a nullity," ergo, void.

Suit No. 1. The court fixed Interpole's damages at $43,276 and denied Trastco's motion to set off the $30,000 settlement in Suit No. 2 against the $43,276 default judgment in Suit No. 1.

In the previous appeal, we affirmed the entry of default, the assessment of damages, and the lower court's refusal to offset the two judgments. *Interpole I,* 899 F.2d at 111–14. At the same time, we remanded for a hearing on Trastco's claim that the absence of personal jurisdiction rendered the judgment against it in Suit No. 1 a nullity. *Id.* at 114–16. Trastco has now appealed the district court's refusal to find that the judgment was void. The dispute between GCT and Interpole has been resolved and is not before us.

## II. DISCUSSION

■ The district court asserted personal jurisdiction over Trastco on the ground that Interpole's cause of action against it fell within the purview of New Hampshire's long arm statute and that exercising jurisdiction did not offend due process. We bypass this analysis, not because we have substantial reason to question its soundness, but because of our conclusion that Trastco submitted itself to the court's personal jurisdiction by instituting Suit No. 2, thus making a conventional long arm analysis irrelevant.[2] *See Knowlton v. Allied Van Lines, Inc.,* 900 F.2d 1196, 1198–99 (8th Cir.1990) (a court may exercise personal jurisdiction over an out-of-state defendant independently of a long arm statute).

■ It is settled beyond peradventure that the requirement of personal jurisdiction is intended to protect a defendant's liberty interests. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702–03, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). Because the defense is a personal right, it may be obviated by consent or otherwise waived. *Id.* at 703, 102 S.Ct. at 2104; *Jardines Bacata, Ltd. v. Diaz–Marquez,* 878 F.2d 1555, 1559

(1st Cir.1989). A defendant may manifest consent to a court's *in personam* jurisdiction in any number of ways, from failure seasonably to interpose a jurisdictional defense, to express acquiescence in the prosecution of a cause in a given forum, to submission implied from conduct. *See Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167 (1939); *Marcial Ucin, S.A. v. SS Galicia,* 723 F.2d 994, 996 (1st Cir. 1983). By the same token, a party's consent to a court's jurisdiction may take place prior to the suit's institution, *e.g., National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 314–15, 84 S.Ct. 411, 413–14, 11 L.Ed.2d 354 (1964) (contractual agreement to submit to jurisdiction in event of subsequent dispute); *Holloway v. Wright & Morrissey, Inc.,* 739 F.2d 695, 699 (1st Cir. 1984) (authorization of agent within forum state to receive service of process), or at the time suit is brought, *e.g., Adam v. Saenger,* 303 U.S. 59, 67–68, 58 S.Ct. 454, 458, 82 L.Ed. 649 (1938) (by suing, a plaintiff submits himself to the court's jurisdiction for purposes of the defendant's counterclaims), or after suit has started, *e.g., Insurance Corp. of Ireland,* 456 U.S. at 709, 102 S.Ct. at 2107 (jurisdiction imposed as a result of defendant's refusal to cooperate in discovery). And having objected to the absence of *in personam* jurisdiction, a defendant may rescind the objection, i.e., consent to the forum court's jurisdiction, at any stage of the proceedings. *See Spann v. Colonial Village, Inc.,* 899 F.2d 24, 32–33 (D.C.Cir.), *cert. denied,* —— U.S. ——, ——, ——, 111 S.Ct. 508, 509, 751, 112 L.Ed.2d 521, 771 (1990).

In terms of submission to a court's jurisdiction, it is possible to attempt fine distinctions between "waiver" and "consent." It can be argued, for example, that the distinction turns on whether the manifesting conduct took place within, or outside of, the confines of the suit in question. In that formulation, "waiver" customarily occurs by virtue of the manner in which the objec-

---

**2.** In our earlier opinion, we specifically withheld a determination "as to the effect, if any, of Trastco's commencement of Suit No. 2 on the jurisdictional calculus." *Interpole I,* 899 F.2d at 116 n. 8. Today, we explore that terrain.

tor manages its role *qua* litigant. *See, e.g., Insurance Corp. of Ireland,* 456 U.S. 694, 102 S.Ct. 2099 (waiver of jurisdictional defense by virtue of noncooperation in discovery); Fed.R.Civ.P. 12(h) (waiver by virtue of failure seasonably to plead defense). On the other hand, "consent" customarily occurs by virtue of some adscititious event, arising from an extrinsic act or omission of the objector, beyond the borders of the suit proper. *See, e.g., National Equipment Rental,* 375 U.S. 311, 84 S.Ct. 411 (contractual agreement to appoint agent for service of process); *Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co.,* 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610 (1917) (foreign corporation's registration to do business constitutes consent to jurisdiction of state's courts on any cause of action).[3]

We view such distinctions as artificial and unnecessary, at least for the purpose at hand. Whatever label one might place on Trastco's conduct, it seems pellucidly clear that, by bringing Suit No. 2, Trastco submitted itself to the district court's jurisdiction in Suit No. 1. Trastco elected to avail itself of the benefits of the New Hampshire courts *as a plaintiff,* starting a suit against Interpole.[4] By so doing, we think it is inevitable that Trastco surrendered any jurisdictional objections to claims that Interpole wished to assert against it in consequence of the same transaction or arising out of the same nucleus of operative facts. Indeed, given the common transactional core, Interpole's third-party complaint in Suit No. 1 stands in the same relation to Trastco's complaint in Suit No. 2 as would a counterclaim. And, the Supreme Court has long recognized the inequity that would result if a plaintiff could raise jurisdictional objections to counterclaims filed by a defendant:

> The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condition of opening its courts to the plaintiff.

*Adam v. Saenger,* 303 U.S. at 67–68, 58 S.Ct. at 458.

In the same vein, a ruling that Trastco did not submit to the court's jurisdiction in Suit No. 1 when it instituted Suit No. 2 would produce an unjust asymmetry, allowing a party (here, Trastco) to enjoy the full benefits of access to a state's courts *qua* plaintiff, while nonetheless retaining immunity from the courts' authority *qua* defendant in respect to claims asserted by the very party it was suing (here, Interpole). This asymmetry would be starker still, because Trastco, on its view of the jurisdictional universe, would be permitted to sue Interpole in a New Hampshire court on a claim arising out of the Oman shipment but Interpole would be precluded from bringing a claim against Trastco in the same court based on the same transaction.[5]

---

**3.** Another view might hold that a distinction between "waiver" and "consent" turns on whether the manifesting conduct took place prior or subsequent to the suit's institution. Such a view recognizes that consent ordinarily consists of *ex ante* conduct while waiver ordinarily occurs in the form of actions taken *ex post.* But, these concepts can overlap. *See, e.g., Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (failure of absent plaintiffs to opt out of class viewed as consent even though class response measured after suit was commenced).

**4.** In the context of personal jurisdiction, it is settled that the concept of a "state's courts" includes those federal courts located within the state. *See, e.g., Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775–77, 104 S.Ct. 1473, 1478–79, 79 L.Ed.2d 790 (1984), where, in a diversity case

brought in the United States District Court for the District of New Hampshire, the High Court examined "the 'fairness' of haling respondent into a New Hampshire court," and noted New Hampshire's "substantial interest in cooperating with other States ... to provide a forum for efficiently litigating all issues" involved. Hence, for purposes of our analysis, we do not distinguish between the federal district court and the New Hampshire state courts.

**5.** Indeed, Trastco's maneuver, if sanctioned, would spawn an aggravated version of the imbalance against which Justice Brennan recently warned in voting to uphold an assertion of transient jurisdiction. *See Burnham v. Superior Court,* — U.S. ——, 110 S.Ct. 2105, 2125, 109 L.Ed.2d 631 (1990) (Brennan, J., concurring) ("Without transient jurisdiction, an asym-

There is no warrant in either law or logic for accepting such an incongruous result. We, therefore, hold that the appellant, by initiating its own suit, submitted to the district court's jurisdiction in the prior action. *See Lyman Steel Corp. v. Ferrostaal Metals Corp.*, 747 F.Supp. 389, 396–97 (N.D.Ohio 1990) (defendant's subsequent filing of an independent suit in the same forum involving the same underlying transactions was a sufficient predicate for the court's exercise of *in personam* jurisdiction in the original action); *cf. Biener v. Hystron Fibers, Inc.*, 78 A.D.2d 162, 434 N.Y.S.2d 343, 346 (1 Dept.1980) ("Where a defendant evinces an intention to make the court his own forum, he waives the jurisdictional objection even though it has been pleaded. . . .").

There is no conceivable unfairness here. The choice to sue in New Hampshire, or to abstain, was Trastco's. Upholding the forum court's assumption of jurisdiction over Trastco in Suit No. 1 seems a small price to exact for allowing Trastco purposefully to avail itself of the benefits of a New Hampshire forum as a plaintiff in Suit No. 2. *See, e.g., Threlkeld v. Tucker*, 496 F.2d 1101, 1103 (9th Cir.1974) (use of a state's courts constitutes a purposeful availment of the state's facilities, sufficient to subject a party to *in personam* jurisdiction in a subsequent suit related to the same overall transaction). A contrary conclusion would senselessly diminish the jurisdictional weight ordinarily accorded to so direct an invocation of the state's benefits and protections. *See id.; see also Lyman*, 747 F.Supp. at 397 ("Voluntarily filing a lawsuit . . . where the facts similarly arise from the same series of events as another [prior] lawsuit can be deemed another indication of purposeful availment of the forum.").

Trastco argues, nevertheless, that it did not waive its jurisdictional objection in Suit No. 1 by filing Suit No. 2 because the latter was itself essentially a counterclaim. It contends, accurately, that courts should not ordinarily treat counterclaims—at least compulsory counterclaims—as waivers of jurisdictional objections. *See Media Duplication Services, Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1233 & n. 2 (1st Cir. 1991) (where defense of ineffective service of process was seasonably raised and consistently pressed, simultaneous pursuit of counterclaim did not waive it); *Bayou Steel Corp. v. M/V Amstelvoorn*, 809 F.2d 1147, 1149 & n. 4 (5th Cir.1987) (filing of a counterclaim "does not operate as a waiver of an objection to jurisdiction"); *Dragor Shipping Corp. v. Union Tank Car Co.*, 378 F.2d 241, 244 (9th Cir.1967) (asserting compulsory counterclaim does not constitute a waiver of jurisdictional defense); *Hasse v. American Photograph Corp.*, 299 F.2d 666, 668–69 (10th Cir.1962) (similar). Trastco's argument is misdirected for two reasons.

First, Trastco did not file a counterclaim in Suit No. 1; rather, it brought a separate action against Interpole. We reject the contention that being a plaintiff in an independent, later-filed suit is, or should be, treated as, the functional equivalent of being a counterclaimant.[6] We intimated as much when we stated that the district court's consolidation of the two suits for purposes of calculating damages did not merge the two actions or alter their individual character. *See Interpole I*, 899 F.2d at 113. Our cases are consentient to the effect that, although two cases may be consolidated for purposes of convenience and judicial economy, they retain their separate identities. *See, e.g., FDIC v. Caledonia Investment Corp.*, 862 F.2d 378, 381 (1st Cir.1988); *In re Massachusetts Helicopter Airlines, Inc.*, 469 F.2d 439, 441–42 (1st Cir.1972). Trastco's attempt to apply a rule that pertains only to claims asserted *within* a single suit to the interaction of two distinct suits is, at best, misguided.

metry would arise: a transient would have the full benefit of the power of the forum State's courts as a plaintiff while retaining immunity from their authority as a defendant.").

6. Unlike Interpole, which could have asserted its claim in Suit No. 1 as a counterclaim in Suit No. 2, Trastco could not have brought Suit No. 2 as a counterclaim in Suit No. 1 because, through its own neglect, it had previously defaulted in Suit No. 1.

After all, square pegs do not normally fit in round holes.

The second reason why the appellant's asseveration collapses is that the cases holding that service of a counterclaim will not undercut a preserved jurisdictional defense are premised on an assumption not present in this case: that the counterclaim is put forward as a conditional position and will not be independently pressed if the primary action is dismissed for lack of personal jurisdiction. *See* 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1397 (2d ed. 1987) ("[T]his practice of allowing a defendant in effect to plead alternatively his counterclaim and his threshold defenses conserves judicial resources, for if one of the defenses proves successful, the parties need not litigate a claim that defendant presumably has no interest in asserting independently."); *cf.* Fed.R.Civ.P. 8(e)(2) (permitting parties to plead "alternately or hypothetically"). The case *sub judice* perches at precisely the opposite end of the spectrum: Trastco filed its claim against Interpole separately, not alternatively; and its $30,000 recovery in Suit No. 2 is neither contingent upon the outcome of the jurisdictional squabble in Suit No. 1 nor subject to vacation if its jurisdictional defense to Suit No. 1 is sustained. Trastco, moreover, filed Suit No. 2 *after* its motion to dismiss for lack of personal jurisdiction in Suit No. 1 had been denied, a circumstance which makes clear that Trastco viewed Suit No. 2 as a jurisdictionally independent piece of litigation.

To say more would be to paint the lily. Trastco's reasons for blunting the easily predictable consequences of its separate suit are unpersuasive. Having sown the wind, it cannot avoid reaping the whirlwind.

## III. CONCLUSION

The requirement that a court possess *in personam* jurisdiction is a shield to protect the interests of an affected defendant—and, like most shields, can be discarded by the bearer. So here. Trastco, as a plaintiff, purposefully availed itself of the benefits and protections of the forum by instituting what we have termed "Suit No. 2." In so doing, Trastco voluntarily submitted itself to the jurisdiction of the New Hampshire courts for purposes of the third-party complaint in Suit No. 1—a complaint arising out of the same transaction as Suit No. 2 and brought by the very party Trastco had sued. Hence, the federal district court did not act unlawfully in thereafter exercising personal jurisdiction over Trastco in Suit No. 1.

We need go no further. The judgment below was not void. The appellant's motion for relief under Fed.R.Civ.P. 60(b)(4) was, therefore, correctly denied.

*Affirmed.*