**OLIN CORPORATION, Plaintiff,**

v.

**FISONS PLC, Nor–Am Chemical Corp., American Biltrite, Inc., And the Biltrite Corporation, Defendants.**

Civil Action No. 93–11166–WGY.

United States District Court, D. Massachusetts.

April 28, 1999.

Robert S. Sanoff, Jonathan M. Ettinger, Foley, Hoag & Eliot, Boston, MA, Charles Swinburn, Morgan, Lewis & Bockius, Washington, DC, Ralph N. Albright, Jr., Morgan, Lewis & Bockius, Washington, DC, Jay H. Calvert, Howard T Weir, Kenneth A. Rubin, Morgan, Lewis & Bockius, for Olin Corporation, plaintiff.

Charles A. Gilman, Patrick L. Rocco, Robert M. Hallman, Cahill, Gordon & Reindel, New York City, Donald R. Frederico, McDermott, Will & Emory, Boston, MA, for Fisons PLC, defendant.

Kenneth J. Warren, Kermit L. Rader, Marc L. Frohman, Manko, Gold & Katcher, Bala Cynwyd, PA, John C. Wyman, Roche, Carens & DeGiacomo, P.C., Boston, MA, for Nor–Am Chemical Corp, Nor-am Chemical Company, defendant.

Roscoe Trimmier, Robert G. Jones, Peter Fratangelo, Ropes & Gray, Boston, MA, J. Daniel Berry, Ropes & Gray, Washington, DC, for American Biltrite, Inc.

Timothy J. Hinkle, Robert G. Jones, Peter Fratangelo, Ropes & Gray, Boston, MA, J. Daniel Berry, Ropes & Gray, Washington, DC, for The Biltrite Corporation.

John C. Wyman, Roche, Carens & DeGiacomo, P.C., Boston, MA, for Nor–Am Chemical Corp.

David S. Weiss, Leonard H. Freeman, Goulston & Storrs, Boston, MA, for The Stepan Co.

Susan M. Insoft, McDermott, Will & Emory, Boston, MA, Donald R. Frederico, McDermott, Will & Emory, Boston, MA, for Fisons Finance Ltd.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I. *Introduction*

Olin Corporation ("Olin") is the current owner of a contaminated former chemical

manufacturing plant in Wilmington, Massachusetts ("the Wilmington Site"). In 1993, Olin filed this action against Fisons PLC ("Fisons"), NOR–AM Chemical Corporation ("NOR–AM"), American Biltrite, Inc., and the Biltrite Corporation (together, "Biltrite") for (1) contribution pursuant to sections 107(a) and 113(f) of the Comprehensive Environmental Response Compensation Liability Act ("CERCLA"), 42 U.S.C. § 9613(f); (2) injunctive relief pursuant to section 7002(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B); and (3) remedies under the Massachusetts Oil and Hazardous Material Release Prevention Act, Mass.Gen.L. ch. 21E ("Chapter 21E"). Biltrite and NOR–AM subsequently filed cross-claims against Fisons for contribution under CERCLA and state law. NOR–AM also filed a cross-claim against Fisons for indemnification.

On December 15, 1998, Olin and Fisons executed a Confidential Settlement Agreement and Mutual Release (the "Settlement Agreement") and have since dismissed all claims and counterclaims against each other. Olin and Fisons then jointly moved to dismiss NOR–AM's and Biltrite's cross-claims against Fisons. This Court dismissed the cross-claims for contribution under CERCLA and state law on April 7, 1999. The Court now addresses Fisons' motion to dismiss NOR–AM's cross-claim for indemnification.

## II. *Background*

The Wilmington Site is a fifty-acre tract located at 51 Eames Street in Wilmington, Massachusetts. Between 1953 and 1986, various owners of the Wilmington Site—including Fisons, Biltrite, and NOR–AM—operated a chemical factory and dumped waste byproducts on the premises. In January 1987, the Massachusetts Department of Environmental Quality Engineering designated the Wilmington Site a Confirmed Disposal Site. Olin has since implemented response actions pursuant to Chapter 21E and the Massachusetts Contingency Plan, 310 C.M.R. § 40.00 *et seq.*

The indemnification claim arises out of a 1983 stock sale agreement between Fisons and several foreign companies not before this Court. In July of 1983, Fisons and the Boots Company, another British corporation, sold shares of FBC Holdings Limited ("FBC"), also a British entity, to Schering Aktiengesellschaft ("Schering"), a German corporation. At the time of the acquisition, FBC held several enterprises, including Fisons Corporation, the entity now known as NOR–AM. As part of the sales contract, Fisons agreed to indemnify Schering for the potential liabilities of NOR–AM and other Fisons subsidiaries for actions occurring before the 1983 sale. *See* Fisons Mem., Ex. D. at § 5.1 and Fourth Sched. at § 32. The sales contract specifically provides that Schering can assign to any of its subsidiaries the right to seek indemnification directly from Fisons for claims made against that subsidiary. *See id.* at § 17.2. Schering has assigned to NOR–AM the right to seek indemnification from Fisons. *See* NOR–AM Mem., Ex. B.

Fisons now moves to dismiss the cross-claim for indemnification on grounds of lack of personal jurisdiction[1] and forum non conveniens.

1. This case initially was assigned to Judge Wolf. On September 22, 1998, Judge Wolf issued an order denying Fisons' motion to dismiss Olin's complaint for lack of personal jurisdiction. *See Olin Corp. v. Fisons PLC,* No. 93–11166–MLW, slip op. at 29 (D.Mass. Sept.22, 1998) (order denying motion to dismiss) ("Judge Wolf Order"). While the Judge Wolf Order is law of the case, it explicitly stated that "Olin has provided evidence that is sufficient for present purposes to establish specific jurisdiction." *Id.* at 23 (emphasis added). Judge Wolf determined that specific jurisdiction over Fisons arose from the alleged contacts of Hugh Dermody ("Dermody"), a Fisons employee, with Patco Products Inc. ("Patco"), a Fisons-owned fertilizer plant located at the Wilmington Site in the late 1960s. *See id.* at 6–7, 22. The Judge Wolf Order does not control NOR–AM's cross-

### III. *Discussion*

#### A. *Personal Jurisdiction*

NOR–AM argues that Fisons is subject to personal jurisdiction in Massachusetts with respect to the cross-claim for three reasons. First, NOR–AM contends that Fisons consented to personal jurisdiction in this Court when it filed an answer on October 30, 1998 asserting cross-claims against NOR–AM and Biltrite. Second, NOR–AM relies on the doctrine of "pendent personal jurisdiction." Finally, NOR–AM asserts that Fisons is subject to personal jurisdiction on the cross-claim under the traditional long-arm and due process analyses.

#### 1. *Consent to Personal Jurisdiction*

■ "A defendant may manifest consent to a court's in personam jurisdiction in any number of ways, from failure seasonably to interpose a jurisdictional defense ... to submission implied from conduct." *General Contracting & Trading Co., L.L.C v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir. 1991). NOR–AM argues that Fisons consented to personal jurisdiction in this Court when it brought cross-claims against NOR–AM and Biltrite. This Court rejects NOR–AM's argument.

In *Interpole*, on which NOR–AM relies, the plaintiff sued Interpole for breach of a sale of goods. *See id.* at 21. Interpole then filed a third party complaint against Trastco, the transporter of the goods. *See id.* Trastco failed to respond to the suit and the court entered default judgment against it. *See id.* After unsuccessfully attempting to lift the default, Trastco brought a separate action in the same federal district court against Interpole for fraud and misrepresentation in connection with the same transaction. *See id.* Trastco then argued before the First Circuit that the default judgment entered against it in the first action was unenforceable for lack of personal jurisdiction. *See id.* at 22. The First Circuit held that Trastco had submitted to the court's jurisdiction by initiating its own suit against Interpole in the same court. *See id.* at 25. *Interpole* is inapposite to the instant case because Fisons, unlike Trastco, has not filed a separate action against NOR–AM in the same jurisdiction. Here, Fisons asserted the defense of lack of personal jurisdiction and, in the same responsive pleading, asserted cross-claims against NOR–AM and Biltrite. The First Circuit has not considered whether a defendant who asserts a personal jurisdiction objection nevertheless waives that objection by also filing a cross-claim in the same responsive pleading.[2]

In *Lomanco, Inc. v. Missouri Pacific Railroad Company*, 566 F.Supp. 846, 849 (E.D.Ark.1983), the plaintiff and the railroad defendant argued that the other two defendants had waived their defense of lack of personal jurisdiction when they filed cross-claims for indemnification against the railroad. The court rejected the argument, reasoning that Rule 12(b) of the Federal Rules of Civil Procedure implicitly allows a defendant to assert both a 12(b)(2) defense and a cross-claim in its answer.[3] *See id.* at 850 (*citing Neifeld v. Steinberg*, 438 F.2d 423 [3d Cir.1971] ). If simultaneous assertion of the personal jurisdiction defense and a cross-claim could

---

claim for indemnification because the cross-claim does not arise from the specific contacts between Dermody and Patco. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

**2.** In *Interpole*, 940 F.2d at 24, the First Circuit explicitly distinguished the filing of a separate lawsuit from a counterclaim when determining whether Trastco had waived its objection to personal jurisdiction.

**3.** Fed.R.Civ.P. 12(b) provides in relevant part: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may *at the option of the pleader be made by motion:* ... (2) lack of jurisdiction over the person...." (emphasis added).

waive the defense a defendant would be forced to assert the personal jurisdiction defense by motion. *See Neifeld,* 438 F.2d at 428. Such a result would controvert the choice between motion and answer that Fed.R.Civ.P. 12(b) explicitly provides. *See id.*

Based on this reasoning, "the majority [of cases] now holds the filing of a cross-claim or third-party claim in the same pleading in which the defendant asserts a defense of lack of personal jurisdiction does not waive the jurisdictional defense." *Proctor & Gamble Cellulose Co. v. Viskoza–Loznica,* 33 F.Supp.2d 644, 645–46 (W.D.Tenn.1998) (citing cases). Fisons asserted its objection to this Court's exercise of personal jurisdiction over it in the same pleading in which it asserted cross-claims against NOR–AM and Biltrite. Accordingly, this Court concludes that Fisons did not submit to personal jurisdiction in Massachusetts by filing cross-claims. *See, e.g., Lomanco,* 566 F.Supp. at 851.

2. *Pendent Personal Jurisdiction*

■ NOR–AM also argues that jurisdiction over Fisons is proper under the doctrine of pendent personal jurisdiction. According to that doctrine, a court having personal jurisdiction over a defendant as to one count of a multi-count complaint also has personal jurisdiction over the defendant with respect to the other counts. *See Home Owners Funding Corp. of America v. Century Bank,* 695 F.Supp. 1343, 1345 (D.Mass.1988). The current motion, however, does not involve multiple counts of a complaint. Rather, the issue is whether the Court has personal jurisdiction over Fisons with respect to NOR–AM's cross-claim given that Judge Wolf predicated personal jurisdiction over Fisons on Olin's claims against Fisons, which Olin has since dismissed. This Court declines to extend the judge-made doctrine of pendent personal jurisdiction to the current situation.

As this Court has explained, the doctrine of pendent personal jurisdiction has its roots in the jurisprudence of pendent sub-ject matter jurisdiction, *see Val Leasing, Inc. v. Hutson,* 674 F.Supp. 53, 56 (D.Mass.1987), and in fact "there is a clearly discernible trend among the modern federal cases to allow pendent personal jurisdiction in those circumstances where a court has pendent subject matter jurisdiction," *Amtrol, Inc. v. Vent–Rite Valve Corp.,* 646 F.Supp. 1168, 1174 (D.Mass. 1986). Thus, a discussion of pendent subject matter jurisdiction informs the Court as to resolution of this issue.

■ In the realm of pendent subject matter jurisdiction, it is the settled rule of the First Circuit that when a pendent state claim is joined with a federal cause of action that subsequently drops out of the case, a federal district court should dismiss the pendent state claim. *See Cullen v. Mattaliano,* 690 F.Supp. 93, 99 (D.Mass. 1988), *aff'd,* 953 F.2d 634 (1st Cir.1991). In this case, Judge Wolf held that Fisons was subject to personal jurisdiction in Massachusetts with respect to Olin's claims against Fisons. Olin has voluntarily dismissed its claims against Fisons. Accordingly, just as this Court would dismiss remaining state law claims for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) absent diversity of citizenship, this Court likewise should dismiss the cross-claim against Fisons for lack of personal jurisdiction, absent some other jurisdictional hook.

3. *Long/Arm Due Process Analysis*

■ Finally, NOR–AM argues that Fisons is subject to personal jurisdiction with respect to the cross-claim under the traditional long-arm/due process analysis. NOR–AM bears the burden of proving this Court's jurisdiction over Fisons. *See, e.g., Good Hope Indus., Inc. v. Ryder Scott Co.,* 378 Mass. 1, 3, 389 N.E.2d 76 (1979). To defeat the motion to dismiss, NOR–AM must proffer facts sufficient to satisfy both the Massachusetts long-arm statute, Mass. Gen.L. ch. 223A, § 3, and the Due Process Clause of the Fourteenth Amendment

to the United States Constitution. *See, e.g., Commonwealth of Puerto Rico v. SS Zoe Colocotroni,* 628 F.2d 652, 667 (1st Cir.1980).

### (a) Long–Arm Requirement

■ The courts of Massachusetts "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's ... contracting to insure any person, property or risk located within this commonwealth at the time of contracting." Mass.Gen.L. ch. 223A, § 3(f). This Court concludes that Fisons' 1983 contract with Schering, described above, places Fisons within the scope of section 3(f).

In 1983, Fisons contracted with Schering to indemnify Schering for the potential liabilities of NOR–AM and other Fisons subsidiaries for actions occurring before the 1983 sale. *See* Fisons Mem., Ex. D. at ¶ 5.1 and Fourth Sched. at ¶ 32. Before the transfer to Schering, NOR–AM was called "Fisons Corporation." Fisons incorporated Fisons Corporation on December 1, 1966 Massachusetts. *See* Judge Wolf Order at 5. At that time, Fisons Corporation served as an umbrella corporation for Fisons' American subsidiaries. *See id.* That same year, Fisons transferred its stock in Patco—the fertilizer manufacturing plant located on the Wilmington Site— to Fisons Corporation. *See id.* Thus, under the 1983 agreement between Fisons and Schering, Fisons contracted to insure Schering for the pre–1983 liabilities of Fisons Corporation, which was a person, property, or risk located in Massachusetts and which held the stock of a fertilizer manufacturer located at the Wilmington site. Accordingly, this Court concludes that Fisons' conduct satisfies the literal requirements of section 3(f). *See American Home Assurance Co. v. Sport Maska, Inc.,* 808 F.Supp. 67, 75–76 (D.Mass.1992) (Keeton, J.).

The long-arm statute limits a court's jurisdiction over a foreign defendant to situations in which there is "a cause of action in law or equity *arising from* " the defendant's contracting to insure a risk located within the commonwealth. Mass. Gen.L. ch. 223A, § 3(f) (emphasis added); *Lyle Richards Int'l, Ltd. v. Ashworth, Inc.,* 132 F.3d 111, 114 (1st Cir.1997). The "arising from" language is generously construed in favor of asserting personal jurisdiction. *See Lyle Richards,* 132 F.3d at 114. There is little doubt that NOR–AM's cross-claim for indemnification arises from Fisons' agreement to indemnify Schering for the liabilities of Fisons Corporation.

### (b) Due Process Requirement

■ Two conditions must be met before a foreign defendant can be brought into court in conformity with the Due Process Clause. First, the defendant purposely must have established "minimum contacts" with the forum such that the defendant could reasonably foresee being haled into that forum's court. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Second, if minimum contacts exist, the exercise of personal jurisdiction over the defendant must comport with notions of "fair play and substantial justice." *Id.* at 476, 105 S.Ct. 2174.

The Massachusetts Supreme Judicial Court has said that the long-arm statute "functions as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States...." *Good Hope Indus.,* 378 Mass. at 6, 389 N.E.2d 76 (citations and internal quotation marks omitted). Moreover, to the extent that the long-arm statute and the Due Process Clause are not coextensive, federal courts have interpreted the long-arm statute to provide more protection to foreign defendants than does the Fourteenth Amendment. *See Nova Biomedical Corp. v. Moller,* 629 F.2d 190, 192 (1st Cir.1980) ("[R]ather than giving way entirely to constitutional considerations, the statutory language imposes an additional set of constraints....").

The due process requirement, however, is not entirely superfluous. In *D'Almeida v. Stork Brabant B.V.*, 71 F.3d 50 (1st Cir.1995), *cert. denied,* 517 U.S. 1168, 116 S.Ct. 1570, 134 L.Ed.2d 668 (1996), the issue was whether a court could exercise jurisdiction over a foreign corporation on a cross-claim by another foreign corporation for contribution and indemnification. The First Circuit held that even if minimum contacts existed between the defendant and Massachusetts, the exercise of due process would not comport with the notions of fair play and substantial justice. *See id.* at 51. The court explicitly relied on three facts: the claims were solely for indemnification and contribution, the parties had contemplated litigation in Holland rather than Massachusetts (as reflected by a forum selection clause in their agreement), and Massachusetts had little interest in a dispute between two nonresidents. *See id.*

The instant case is quite similar. The cross-claim is solely for indemnification and Massachusetts has little interest in whether one nonresident company must indemnify another. While the 1983 agreement did not designate England as the exclusive forum for litigation, it did require Shering to consent to process in England, indicating that the parties at least contemplated that litigation would probably occur there.

Were personal jurisdiction the only ground on which Fisons had moved to dismiss the cross-claim, this Court would be torn between *D'Almeida* and the typically laissez-fair treatment that this Circuit has afforded the due process analysis in personal jurisdiction cases. Fisons has, however, also moved to dismiss the cross-claim on the ground of forum non conveniens, and it is this ground on which the Court opts to rest its holding. The Court now turns to that discussion.

## B. *Forum Non Conveniens*

Fisons argues that even if this Court can exercise personal jurisdiction over it with respect to the cross-claim, the Court should dismiss the cross-claim under the doctrine of forum non conveniens. The doctrine of forum non conveniens permits a federal court to dismiss a claim when an alternative forum is available in another nation that is fair to the parties and substantially more convenient for the parties or the courts. *See Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1349 (1st Cir.1992), *cert. denied,* 508 U.S. 912, 113 S.Ct. 2346, 124 L.Ed.2d 255 (1993). Fisons contends that England is the appropriate forum for litigation of the cross-claim. There is, however, a strong presumption in favor of the plaintiff's choice of forum. *See id.* Consequently, the movant bears a heavy burden of proving both (1) the availability of an alternative forum, and (2) the likelihood of serious unfairness to the parties in the absence of a transfer to the alternative forum. *See id.*

### 1. *Adequate Alternative Forum*

To establish the existence of a satisfactory alternative forum, the moving party must first show that it is amenable to process in the alternative forum. *See id.* The parties do not dispute that Fisons is amenable to process in England. Having satisfied the first requirement, the moving party next must show that "the remedy provided by the alternative forum is [not] so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* A foreign forum is inadequate if it "does not permit litigation of the subject matter of the dispute...." *Id.* The courts of England recognize a cause of action for indemnification. *See, e.g., Shell Chems. UK Ltd. v. P & O Roadtanks, Ltd.*, 1 Lloyd's Rep. 297 (C.A.1995).

Moreover, "as suggested by a long line of cases, England is generally considered an adequate forum." *Thomson Info. Services v. British Telecomm.*, 940 F.Supp. 20, 23 (D.Mass.1996) (Tauro, C.J.) (listing cases). A forum, however, is also inadequate if the plaintiff demonstrates significant political or legal obstacles to conduct-

ing litigation in the alternative forum. *See Mercier*, 981 F.2d at 1350. For instance, a foreign forum is inadequate if the plaintiff's claim would be time-barred there. *See Marriott v. Sedco Forex Int'l Resources, Ltd.*, 827 F.Supp. 59, 69 (D.Mass. 1993). The statute of limitations does not prejudice NOR–AM in this case because, under English law, this cause of action for indemnification will not accrue until the fact and extent of NOR–AM's liability is established by this Court. *See County & District Properties Ltd. v. C. Jenner & Son Ltd.*, 230 E.G. 1589 (Q.B.1974). Accordingly, this Court concludes that England is an adequate alternative forum and proceeds to consider the likelihood of serious unfairness to the parties in the absence of transfer to the English courts. *See Mercier*, 981 F.2d at 1354.

## 2. *Serious Unfairness*

The Supreme Court has identified private and public interest criteria to help courts conduct this inquiry. The private interest criteria include:

> the comparative convenience of the parties' access to sources of proof; the availability of compulsory process and the cost of securing the attendance of witnesses; the possibility of 'a view of the premises, if a view would be appropriate; and an evaluation of "all other practical problems that make trial of a case easy, expeditious and inexpensive."

*Mercier*, 981 F.2d at 1354–55 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 [1947] ). The public interest criteria include:

> the administrative difficulties resulting from court congestion in the plaintiff's chosen forum; the "local interest in having localized controversies decided at home"; the interest in having the trial of a case in a forum that is at home with the governing law; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of imposing jury duty on citizens in an unrelated forum.

*Id.* (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 [1981] ).

### (a) *Private Interest Criteria*

*Ease of Access to Sources of Proof.* The 1983 contract was made between Fisons and the Boots Company, both British corporations, and Schering, a German company, over the sale of FBC, which is based in England. None of the parties to the contract reside in Massachusetts. The parties executed the contract in England and conducted much of the negotiation there. Thus, this factor favors litigation in England. *See Thomson*, 940 F.Supp. at 24 (transferring action to England because, inter alia, most of the witnesses resided there).

*Availability of Compulsory Process and the Cost of Obtaining Attendance of Witnesses.* All of the parties to the 1983 agreement are European. They are all British, except for Schering, which is German. Only Fisons is a party to the Massachusetts litigation. The others are not subject to compulsory process in Massachusetts. If the witnesses willingly participate, it would be less expensive for them to testify in England than in Massachusetts. Thus, this factor also favors litigation in England. *See id.* (noting that the nonparty witnesses were not subject to compulsory process in Massachusetts and that live testimony would be cheaper to obtain in England than in Massachusetts).

*All Other Practical Problems That Make Trial Easy, Expeditious and Inexpensive.* In *Thomson*, Chief Judge Tauro noted that the English courts could more easily oversee litigation because the bulk of documents and witnesses were located there. *See id.* 25. In addition, were the action to proceed in Massachusetts, discovery would have been further complicated by compliance with the procedures of the Hague Convention, 28 U.S.C. § 1781. *See id.* For the same reasons, plus the added factors that the 1983 agreement specifically provides for application of English law

and that the agreement has already been the subject of litigation in England, this measure also favors litigation in England.

### (b) Public Interest Criteria

*The Administrative Difficulties Arising From Court Congestion in the Plaintiff's Chosen Forum.* As this Court has previously noted, the District of Massachusetts has a relatively manageable docket, at least with respect to other federal fora in the United States. *See Clinton Paper Co. v. Stimmel,* No. 92–11418–NG, 1994 WL 548064, at *4 (D.Mass. June 20, 1994) ("[T]he district of Massachusetts is, after a long hiatus, now at full judicial strength with resultant unclogged dockets and speedy hearings."). Accordingly, this factor does not necessitate transfer to England.

*The Local Interest in Having Localized Controversies Decided at Home.* Massachusetts is not home to any of the parties involved in the 1983 agreement or the dispute between NOR–AM and Fisons. Whether one foreign company ultimately must indemnify another for its contribution to clean-up costs is not of particular interest to Massachusetts. The English courts have a greater interest in determining whether its corporation must indemnify NOR–AM. This factor thus weighs in favor of litigation in England.

*The Interest in Having the Trial of a case in a Forum that is at Home with the Law that Governs the Action.* English law applies to interpretation of the 1983 agreement between Fisons and Schering. This factor, then, supports transfer of the action to England. *See Howe v. Goldcorp. Invs., Ltd.,* 946 F.2d 944, 953 (1st Cir.1991) (granting motion to transfer securities action to Canada because, among other factors, Canadian law applied), *cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 418 (1992).

Taking all of these factors into account, it appears that litigation in England would be sufficiently more convenient as to make litigation in Massachusetts unfair to the parties. *See Mercier,* 981 F.2d at 1354; *Howe,* 946 F.2d at 950–953; *Thomson,* 940 F.Supp. at 23–26. Under these circumstances, dismissal of the cross-claim in favor of litigation in England is appropriate.

The willingness of the English courts to reach the merits of this dispute is, of course, crucial to this Court's conclusion that those courts are "adequate" for the purposes of determining which forum is most convenient. Should Fisons manage to avoid trial on the merits of the indemnity claim in England, this Court will revisit the entire question of its personal jurisdiction over Fisons and which forum is most "convenient."

### IV. Conclusion

For the foregoing reasons, this Court GRANTS Fisons' motion to dismiss NOR–AM's cross-claim for indemnification on the ground of forum non conveniens. (Docket number 404).