21-664-cv
V&A Collection, LLC v. Guzzini Properties Ltd

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2021

(Argued:     January 12, 2022                    Decided:  August 23, 2022)

Docket No. 21-664-cv

_____

V&A COLLECTION, LLC,

*Plaintiff-Appellant*,

v.

GUZZINI PROPERTIES LTD.,

*Defendant-Appellee*.

_____

Before: POOLER, CHIN and CARNEY, *Circuit Judges*.

Art dealer Inigo Philbrick sold V&A Collection, LLC an ownership interest in an artwork by Wade Guyton (the "Guyton"). In a second transaction, made without V&A's knowledge or participation, Guzzini Properties Ltd. purchased the Guyton, an artwork by Rudolf Stingel (the "Stingel"), and a third painting

from an entity controlled by Philbrick. In 2019, Guzzini brought an in rem action to quiet title to the Stingel in New York Supreme Court. V&A attempted to intervene in that action to litigate its claims to the Guyton. The state court denied the motion to intervene, and V&A commenced a separate action against Guzzini for conversion, based on Guzzini's interference with V&A's ownership of the Guyton.

Guzzini removed the second action to federal court, and then moved to dismiss, in relevant part, for lack of personal jurisdiction. V&A argued that by suing to quiet title to the Stingel in New York state court, Guzzini consented to submit to the jurisdiction of New York courts for all claims arising out of the same agreement, including its claims regarding the Guyton. The district court (Failla, *J.*) found that because the two lawsuits did not arise out of the same transaction, Guzzini did not implicitly consent to litigating the dispute over the Guyton in New York. *V&A Collection, LLC v. Guzzini Props., Ltd.*, No. 20-cv-1797, 2021 WL 982461, at *6 (S.D.N.Y. Mar. 15, 2021).

Affirmed.

_____

JUDD GROSSMAN, Grossman LLP, New York, N.Y.,
*for Appellant V&A Collection, LLC.*

2

NINA EDELMAN, Mazzola Lindstrom LLP (Wendy J. Lindstrom, Jean-Claude Mazzola, *on the brief*), New York, N.Y., *for Appellee Guzzini Properties Ltd*.

POOLER, *Circuit Judge*:

Art dealer Inigo Philbrick sold V&A Collection, LLC an ownership interest in an artwork by Wade Guyton (the "Guyton"). In a second transaction, made without V&A's knowledge or participation, Guzzini Properties Ltd. purchased the Guyton, an artwork by Rudolf Stingel (the "Stingel"), and a third painting from Inigo Philbrick Limited ("IPL"), an entity controlled by Philbrick. In 2019, Guzzini brought an in rem action to quiet title to the Stingel in New York State Supreme Court. V&A attempted to intervene in that action to litigate its claims to the Guyton. The state court denied the motion to intervene, and V&A commenced a separate action against Guzzini for conversion, based on Guzzini's interference with V&A's ownership of the Guyton.

Guzzini removed the action to federal court, and then moved to dismiss, in relevant part, for lack of personal jurisdiction. V&A argued that by suing to quiet title to the Stingel in New York state court, Guzzini consented to submit to the jurisdiction of New York courts for all claims arising out of the same agreement with IPL, including its claims regarding the Guyton. The district court (Failla, *J*.)

3

found that because the two lawsuits did not arise out of the same transaction, Guzzini did not implicitly consent to litigating the dispute over the Guyton in New York. *V&A Collection, LLC v. Guzzini Properties, Ltd.*, No. 20-cv-1797, 2021 WL 982461, at *6 (S.D.N.Y. Mar. 15, 2021). We find no basis for jurisdiction over Guzzini based on implicit consent or otherwise, and we therefore affirm.

## BACKGROUND

This case concerns the ownership of a piece of artwork by Guyton entitled *Flaming "U"* that disgraced art dealer Inigo Philbrick[1] allegedly sold to both V&A and Guzzini. In July 2013 V&A purchased a 50 percent interest in the Guyton from Modern Collections, a London art dealer. Modern Collection retained a 50 percent interest in the work. In addition to receiving a 50 percent interest in the Guyton, V&A was to receive an additional $350,000 in cash in exchange for a different work V&A had purchased from Modern Collections the year before. V&A and Modern Collections further agreed that upon any later sale of the

---

[1] After pleading guilty to fraud and agreeing to forfeit $86 million, Philbrick was sentenced to seven years' imprisonment in May 2022. Colin Moynihan, *Art Dealer Sentenced to 7 Years in $86 Million Fraud Scheme*, N.Y. Times (May 23, 2022), https://www.nytimes.com/2022/05/23/arts/inigo-philbrick-art-dealer-sentenced-prison.html; *see also United States v. Philbrick*, No. 20-cr-351-SHS-1 (S.D.N.Y. May 25, 2022), ECF No. 67.

Guyton, V&A would receive $850,000, Modern Collection would receive $700,000, and the two would split any profit over and above those amounts. Philbrick represented Modern Collections in the transaction, and was one of its principals. V&A did not authorize any sale or other disposition of its interest in the Guyton.

In June 2017, IPL, an entity controlled by Philbrick, entered into a purchase and sale agreement with Guzzini for three pieces of art, including the Guyton, for $6 million (the "June 2017 Agreement"). As relevant here, that agreement provided that: "[t]he Seller has agreed to sell the Artworks [] and [Guzzini] has agreed to purchase the Artworks upon the terms and conditions set out in this Agreement." App'x at 83. It also warrantied that: "[t]he Seller has full legal and beneficial title to the Artworks and is entitled without further action to transfer the legal and beneficial title in the Artworks to the Buyer on the terms of this Agreement without the consent of any third party." App'x at 85 ¶ 4.1.1. The seller held a buyback option through August 2018. App'x at 86 ¶¶ 5.1-5.6. That buyback option was extended in exchange for additional fees, with the other terms of the June 2017 Agreement remaining in effect.

V&A alleges that while Guzzini styles the June 2017 Agreement as a sale, "the face of the governing agreement makes clear [that] Guzzini was *loaning* $6 million to IPL, and in return IPL purported to pledge the three artworks, including the Guyton and the Stingel, as collateral." App'x at 16. V&A notes that the agreement values the artwork at $25 million for insurance purposes, despite the $6 million purchase price. V&A alleges that on learning of Guzzini's claim to the Guyton in October 2019, it immediately notified Guzzini of its ownership interest.

Guzzini declined to recognize V&A's ownership interests. V&A alleges that Guzzini initially represented that it had physical custody of the Guyton, but during the course of this litigation revealed that it transferred ownership of the Guyton on November 1, 2019. The Guyton is now owned by non-party Lanark Services Ltd. and at all times relevant has been located in Switzerland.

Separately, a dispute arose as to the ownership of the Stingel, an artwork entitled *Picasso* that Guzzini also purchased under the June 2017 Agreement. Guzzini brought an in rem action in New York Supreme Court, New York County, in Fall 2019 to quiet title to the Stingel (the "Stingel Action"). *See Guzzini Props. Ltd. v. "Untitled by Rudolf Stingel, 2012," in Rem*, Index No. 656467/2019

6

(N.Y. Sup. Ct. filed Oct. 30, 2019). According to Guzzini, it brought the in rem action in New York state court because that is where the Stingel was located.

V&A moved to intervene in that action and sought an injunction barring Guzzini from selling, transferring, or otherwise disposing of the Guyton work while the issue of ownership was being litigated. New York Supreme Court denied the motion to intervene on the ground that V&A's claims did not concern the Stingel painting. **[JA 129:18-25]** The state court urged V&A to file a separate action regarding the Guyton and noted that it would be "willing to consider [that action as] a related action and defer for now on whether [the actions could be] consolidated for discovery or more broadly. "App'x at 126.

V&A then filed its own action in state court alleging conversion, which Guzzini timely removed to federal court on the basis of diversity jurisdiction. V&A is a New York limited liability company. Guzzini is a company registered in the British Virgin Islands, with a principal place of business in London. V&A alleged that Guzzini consented to jurisdiction in New York, noting that Guzzini claimed to have acquired title to both the Stingel and the Guyton under the June 2017 Agreement. By bringing the Stingel Action in New York, V&A alleged, "Guzzini has consented to this Court's jurisdiction to adjudicate its rights under

7

the [June 2017 Agreement]—the very same contract under which Guzzini claims to have purchased the Guyton artwork at issue in this dispute." App'x at 15.

Guzzini sought a conference in district court regarding its proposed motion to dismiss the complaint for lack of personal jurisdiction, and the district court permitted the parties to engage in limited jurisdictional discovery. Guzzini then moved to dismiss, arguing that (1) the court lacked specific personal jurisdiction over it; (2) the doctrine of forum non conveniens mandated dismissal; (3) V&A failed to state a claim for conversion; and (4) the district court could not exercise equity jurisdiction. The district court concluded it lacked personal jurisdiction over Guzzini and declined to consider the alternative grounds for dismissal. *V&A Collection*, 2021 WL 982461, at *3, *7. This appeal followed.

**DISCUSSION**

V&A argues that the district court erred when it concluded that in bringing an in rem action to quiet title to the Stingel, Guzzini did not consent to the jurisdiction of New York courts for the purpose of litigating the ownership of the Guyton. V&A alleges that both paintings were involved in the June 2017 Agreement, such that both the Stingel Action and this action arise out of the

8

same transaction. Thus, by bringing its in rem suit to quiet title to the Stingel in New York, V&A argues that Guzzini consented to New York courts exercising personal jurisdiction over it in this litigation regarding ownership of the Guyton.

We review the dismissal of a complaint for lack of personal jurisdiction de novo. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018). "Where, as here, a court relies on pleadings and affidavits, . . . the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant. We construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in [its] favor." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted).

Unlike subject matter jurisdiction, "[t]he requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). "The personal jurisdiction requirement recognizes and protects an individual liberty interest." *Id.* As an individual right, personal jurisdiction, "like other such rights, [may] be waived." *Id.* at 703. "A variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court." *Id.* at 703–04 (collecting cases). In addition, "[t]he

9

actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." *Id*. at 704–05. With a few exceptions, however, "[a] party's consent to jurisdiction in one case [] extends to that case alone. It in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available." *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991).

One exception arises in the context of counterclaims, where a plaintiff bringing suit in a forum "submit[s] itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants." *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932). As the Supreme Court observed in *Adam v. Saenger*:

> The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condition of opening its courts to the plaintiff.

303 U.S. 59, 67-68 (1938); *see also Grupke v. Linda Lori Sportswear*, 174 F.R.D. 15, 17 (E.D.N.Y. 1997) ("In the vast majority of cases a plaintiff, by virtue of bringing

suit, waives venue and personal jurisdiction objections to a defendant's counterclaims.").

The First Circuit has expanded that rule to extend consent jurisdiction to other lawsuits in the same forum arising out of the same transaction or occurrence. *See Gen. Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20 (1st Cir. 1991). Interpole, a third-party plaintiff, obtained a default judgment against Trastco, a third-party defendant. *Id*. at 21. Trastco then moved to vacate the default judgment for lack of personal jurisdiction, but at the same time commenced its own separate action against Interpole in the same court. *Id.* at 21-22. By doing so, the First Circuit held, "Trastco surrendered any jurisdictional objections to claims that Interpole wished to assert against it in consequence of the same transaction or arising out of the same nucleus of operative facts." *Id*. at 23. *Interpole* thus adopted "an affirmative relief rule, specifying that personal jurisdiction exists where a defendant also independently seeks *affirmative* relief in a separate action before the same court concerning the same transaction or occurrence." *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 834 (9th Cir. 2005); *see also Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 897 (D. Md. 2008) (finding

consent jurisdiction where defendant commenced an action involving the same parties and related to the same transaction as the second action).

V&A urges that we adopt *Interpole* and find the exercise of jurisdiction proper here. But *Interpole's* rationale does not apply here. This case concerns a dispute as to the ownership of the Guyton between V&A and Guzzini. At all times relevant to this litigation, the Guyton has been located in Switzerland. The state court case concerns the ownership of the Stingel, which is located in New York. The location of the Stingel dictated the forum of Guzzini's in rem action. *See, e.g., Ward v. Boyce*, 152 N.Y. 191, 196, 46 N.E. 180, 181 (1897) (for a proceeding in rem, property must be located within the jurisdiction); 29 N.Y. Jur. 2d *Courts & Judges* § 669 (discussing location of subject matter or res). V&A alleges no ownership interest in the Stingel, and Guzzini did not name V&A as a party in that action. Accordingly, Guzzini's consent to jurisdiction in New York for purposes of the state in rem action does not extend that consent to other lawsuits. *See Klinghoffer*, 937 F.2d 44, 50 n.5. V&A alleges no other basis for the exercise of personal jurisdiction.

We therefore need not decide whether to adopt *Interpole*, which would not apply here in any event. The Stingel Action involves different parties and an

ownership dispute involving a different piece of artwork. Guzzini's consent to jurisdiction in New York for purposes of the state in rem action does not open it up to other lawsuits. *See Klinghoffer*, 937 F.2d 44, 50 n.5.

And despite V&A's argument to the contrary, this lawsuit does not arise out of the same transaction as the Stingel Action. V&A argues that because both the Guyton and Stingel were allegedly sold in the June 2017 Agreement, this litigation and the state court in rem action to quiet title arise out of the same transaction. It contends that "[t]he threshold—and potentially dispositive—legal issue to be decided in both cases is whether Guzzini obtained title to the artworks under the single" June 2017 Agreement. Appellant's Reply Br. at 1.

We disagree. The enforceability of the June 2017 Agreement may be dispositive in the Stingel Action, which seeks to establish who rightfully owns the Stingel.[2] But resolution of that question is not dispositive here. In the Stingel Action, the only issue to be settled is who owns the Stingel. Assuming Guzzini is unsuccessful in the Stingel Action, the issue of whether Guzzini improperly converted the Guyton would remain unresolved.

---

[2] As of the date of the filing of this opinion, the state court action remains open, with the issue of who owns the Stingel unresolved.

13

Under New York law, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (alteration and internal quotation marks omitted). "To state a claim of conversion, the plaintiff must allege that (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." *Lefkowitz v. Bank of N.Y.*, 676 F. Supp. 2d 229, 251 (S.D.N.Y. 2009) (internal brackets and quotation marks omitted); *see also Colavito v. N.Y. Organ Donor Network, Inc.* 8 N.Y.3d 43, 50 (2006) ("A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession .").

"Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito*, 8 N.Y.3d 49–50 (2006) (citation omitted). A wrongful intent is not required to prove a conversion claim, *Key Bank of N.Y. v. Grossi*, 642 N.Y.S.2d 403, 404 (3d Dept. 1996), such that a

14

party may be liable for conversion even if it acted in good faith, and without knowledge of the plaintiff's claim on the property, *see, e.g.*, *Wright v. Bank of Metropolis*, 110 N.Y. 237, 247–49 (1888); *Boyce v. Brockway*, 31 N.Y. 490, 493–94 (1865). A defendant who came into possession of the property lawfully can still be held liable for conversion if the defendant knew the transfer would violate the superior property rights of another, yet disposed of the property anyway. *See Key Bank*, 642 N.Y.S. at 405.

V&A's conversion claim is premised on its assertion that it has "a possessory right to and at least a 50% ownership interest in the Guyton." App'x at 17 ¶ 29. It alleges that it learned of Guzzini's ownership claim in October 2019, and informed Guzzini then of its competing claim. V&A alleges that it demanded Guzzini return the Guyton, and Guzzini refused. Each of these assertions, if satisfactorily established, could allow V&A to prevail on its conversion claim regardless of the outcome of the state court action. Even if the state court declares the June 2017 Agreement void, that would not settle the question of whether V&A had a "possessory right or interest in the property." *Colavito*, 8 N.Y.3d at 50. As the district court aptly noted, "[t]he particular concerns about symmetry and justice that drove the decisions in *Interpol[e]* and

15

its progeny are not present in this case." *V&A Collection*, 2021 WL 982461 at * 6.

To bring its claim, V&A  must find a court able to exercise jurisdiction over Guzzini.

**CONCLUSION**

For the reasons given above, we affirm.