**Joseph A. MARCANTONIO, Plaintiff,**

v.

**PRIMORSK SHIPPING CORPORATION and A.L.T. Navigation, Ltd., Defendants.**

**No. 01–CV–11447–MEL.**

United States District Court, D. Massachusetts.

Feb. 19, 2002.

Joseph G. Abromovitz, Boston, MA, for Plaintiff.

Dennis O. Brown, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Boston, MA, for Defendants.

David B. Kaplan, Kaplan/Bond Group, Boston Fish Pier, Boston, MA, for Movant.

## MEMORANDUM AND ORDER

LASKER, District Judge.

This case arises out of a shipping disaster on August 5, 2001, in which the *T/V Virgo* allegedly struck and sunk the *F/V Starbound*. Joseph A. Marcantonio was the master of the *Starbound*. Defendant Primorsk Shipping Corp. ("Primorsk") is a foreign corporation based in Nakhodka, Primorsky Province, Russian Federation, which allegedly operated the *Virgo*. Defendant A.L.T. Navigation, Ltd. ("ALT"), is a foreign corporation based in Nicosia, Cyprus, which allegedly owned the *Virgo*. Marcantonio sues in tort for negligence.

There are three pending motions: (1) Primorsk's Motion to Quash Service and Vacate Default; (2) Marcantonio's Motion to Enlarge Time to Serve ALT; and, (3) Giuseppe Cracchiolo's Motion to Intervene. The motion to quash is granted and the default judgment is vacated. Marcantonio's motion to enlarge time is granted. Cracchiolo's motion is denied without prejudice.

### I.

In the early morning of August 5, 2001, the *T/V Virgo* allegedly struck and sunk the *F/V Starbound*. After the collision, three of the *Starbound*'s crew died at sea, but Marcantonio, the ship's master, was rescued. A fifth crew member, Cracchiolo, was not aboard the ship.

Marcantonio commenced this action on August 21, 2001. On August 29, 2001, Gary Loder of Hill View Bay, Newfoundland, Canada, on behalf of Marcantonio, left a copy of a District of Massachusetts summons and the complaint with Vladimir Ponomarc, the captain of a vessel operated by Primorsk, in Long Harbour, Newfoundland, Canada. There was no Russian translation of the documents. Marcantonio also sent copies of the complaint to Primorsk's counsel in Newfoundland and New York. Marcantonio then made a return of service as to Primorsk, and moved for default judgment as to Primorsk on January 3, 2002, claiming to have properly served the corporation. On that representation, and because Primorsk had failed to answer the complaint, this Court granted the motion for default judgment on January 8, 2002.

### II. *Primorsk's Motion to Quash Service and Vacate Default*

Primorsk moves to quash the service attempted on August 29, 2001, and to vacate the default judgment entered on January 8, 2002. Three questions must be

resolved: (1) was service effective? (2) if not, did Primorsk waive its objections to personal jurisdiction? and (3) under the circumstances, is vacating the default judgment appropriate?

### A. Was Service Properly Made on Primorsk?

■ Primorsk contends that Marcantonio did not properly serve process on it. It argues that one of two treaties regarding international service govern the present situation: (1) the *Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, 20 U.S.T. 361, *reprinted in* 28 U.S.C.A., Fed.R.Civ.P. 4 app. (the "Hague Convention"); or, (2) the *Agreement Relating to the Procedure to be Followed in the Exchange of Letters Rogatory;* Exchange of Notes at Moscow, November 22, 1935, *codified at* 49 Stat. 3849, Executive Agreement Series 83, 1935 U.S.T. LEXIS 52, 11 Benans 1262 (the "Moscow Agreement"). Primorsk argues that it was not served in accordance with either treaty's provisions.

Primorsk starts by pointing out that the United States, Canada, and the Russian Federation are signatories to the Hague Convention. The Hague Convention took effect in Canada on April 10, 1989, and in the Russian Federation on November 15, 2001. Primorsk asserts that when and where in effect, the Hague Convention is mandatory. Primorsk argues that since service was made in Canada, the date the Convention took effect in Canada, April 1989, should apply, even though Primorsk is from the Russian Federation. The Hague Convention requires service through a Central Authority designated in each country. It also requires service of certain documents, including a "Request for Service Abroad of Judicial or Extrajudicial Documents" in a format in accord

with a form annexed to the Hague Convention, and which Primorsk argues should have been in the Russian language. Marcantonio has not observed these requirements.

Second, Primorsk argues that if Russian law applies the controlling instrument would be the Moscow Agreement, since Russia became a party to the Hague Convention in November 2001, after the date when Marcantonio attempted to serve Primorsk. The Moscow Agreement requires a United States court to request a Russian court to execute letters rogatory. "All basic documents" must be in Russian. Process travels via diplomatic channels. Marcantonio has not observed these requirements either.

Marcantonio responds that he was not obligated to follow either of these treaties because he properly served Primorsk under the procedure outlined in Rule 4(f)(2)(C)(i). That Rule provides:

> Unless otherwise provided by federal law, service upon an individual ... may be effected in a place not within any judicial district of the United States: ...
>
> (2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice: ...
>
> (C) unless prohibited by the law of the foreign country, by ...
>
> (i) delivery to the individual personally of a copy of the summons and the complaint ....

Marcantonio relies on *Forum Financial Group, LLC v. President and Fellows of Harvard College*, 199 F.R.D. 22 (D.Me. 2001), which held that the Moscow Agreement was not the exclusive instrument according to which service could be made. In the alternative, he argues that this

Court should ratify his attempt by ruling that his method of service was appropriate under Rule 4(f)(3) (allowing service "by other means not prohibited by international agreement as may be directed by the court"). Finally, Marcantonio asserts that mailing a copy of the complaint to Primorsk's counsel in Canada and New York should be effective service under Rule 4(f)(3).

In reply, Primorsk points out that Fed. R.Civ.P. 4(h) governs service of process on corporations outside the United States, not 4(f). In Rule 4(h)(2), it explicitly states that while service can generally be made in accordance with 4(f), it cannot be made under 4(f)(2)(C)(i), the provision Marcantonio attempts to use.

Primorsk distinguishes *Forum Financial Group* from this case on the ground that in *Forum Financial Group*, service was being made on an individual attempting to evade service, not a large corporation such as Primorsk, upon which service can be made during regular business hours without difficulty.

Finally, Primorsk asserts that even if service of process was correctly attempted, Marcantonio cannot show that Captain Ponomarc or Primorsk's attorneys had authority to accept service on behalf of Primorsk.

It is clear that service was not properly made on Primorsk under the Federal Rules of Civil Procedure and the Hague Convention. In United States District Courts, the first reference for service is Fed.R.Civ.P. 4. Serving a corporation outside a judicial district of the United States must be done in accordance with Rule 4(h)(2), which provides in relevant part:

> (h) Service Upon Corporations and Associations. Unless otherwise provided by federal law, service upon a domestic or foreign corporation ... shall be effected: ...

> (2) in a place not within any judicial district of the United States in any manner prescribed for individuals by subdivision (f) except personal delivery as provided in paragraph (2)(C)(i) thereof.

Importantly, Rule 4(f)(2)(C)(i) is precisely the method that Marcantonio claims to have used when serving Ponomarc, yet it is explicitly prohibited by Rule 4(h)(2).

Turning to subsection (f) of Rule 4, it provides:

> Unless otherwise provided by federal law, service ... may be effected in a place not within any judicial district of the United States:

> (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ....

Rule 4(f)(1) requires the use of the provisions outlined by the Hague Convention when it is in effect. As the Advisory Committee Notes to Rule 4 explain:

> Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service. See *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988) (noting that voluntary use of these procedures may be desirable even when service could constitutionally be effected in another manner); J. Weis, *The Federal Rules and the Hague Conventions: Concerns of Conformity and Comity*, 50 U. Pitt. L.Rev. 903 (1989). Therefore, [paragraph (f)(1)] provides that, when service is to be effected outside a judicial district of the United States, the methods of service appropriate under an applicable treaty shall be employed if available and if the treaty so requires.

Accordingly, to make effective service in a country that has joined the Hague Convention, a plaintiff must follow the provisions of the treaty.

The Hague Convention was created "to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). Canada, as noted above, entered into the Hague Convention in April 1989. The country in which service is being made is the country whose laws must be obeyed, not the country of origin of the person or corporation being served. Here, Marcantonio attempted service in Canada, and Canadian law regarding service controls. Because Canada entered into the Hague Convention, its provisions are mandatory. Hague Convention, 20 U.S.T. 361, *reprinted in* 28 U.S.C.A., Fed.R.Civ.P. 4 app., Art. 1 ("The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.").

Since Marcantonio did not follow the provisions of the Hague Convention on August 29, 2001, when he attempted to serve Primorsk through Ponomarc, service was improper.

Nor is Marcantonio's alternative proposal, that this Court should ratify his attempt to serve Primorsk by mailing process to Primorsk's attorneys, convincing. *See* Fed.R.Civ.P. 4(f)(3). The Rule provides:

Unless otherwise provided by federal law, service … may be effected in a place not within any judicial district of the United States: …

(3) by other means not prohibited by international agreement as may be directed by the court.

Fed.R.Civ.P. 4(f)(3). The Advisory Committee Notes on the provision state:

Paragraph (3) authorizes the court to approve other methods of service not prohibited by international agreements. The Hague Convention, for example, authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances …. [Under some circumstances], the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement. Inasmuch as our Constitution requires that reasonable notice be given, an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law.

Marcantonio has not demonstrated that circumstances existed requiring resort to Rule 4(f)(3), which should be seen as a final effort to make service when other means have failed. To be sure, the Court in *Forum Financial Group*, 199 F.R.D. at 23–24, found that "[b]y its plain language and syntax, Rule 4(f)(3)'s alternative is not a last resort, nor is it any less favored than service under subsections (1) and (2)." However, that case involved a situation in which the Court held that no international agreement applied, and therefore analyzed whether subsection (f)(2) or (f)(3) took precedence. On the other hand, it is clear from the Advisory Committee Notes on Rule 4, which state "[u]se of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service," that subsection (f)(1) does take precedence when, as here, an international treaty so requires.

Marcantonio has not made any attempt to comply with the Hague Convention, and therefore employing Rule 4(f)(3) is at present inapplicable.[1]

Moreover, as Primorsk correctly points out, not all agents of a corporation are authorized to accept service. Marcantonio has presented no evidence that Ponomarc was authorized to receive process, and Primorsk alleges that Ponomarc was neither its agent nor authorized to accept service. Primorsk's attorneys have also represented that they were not authorized to receive process. This fact distinguishes the instant matter from *Forum Financial Group*, 199 F.R.D. at 22, in which service on an attorney was allowed because the attorney had been authorized to accept service for the same client in the past.

### B. Did Primorsk Waive its Objection to Personal Jurisdiction?

Even if improperly served, a Court may still obtain jurisdiction over a defendant if the defendant has made an appearance consenting to personal jurisdiction. Marcantonio argues that Primorsk has made such an appearance by filing a claim in the limitation of liability proceeding initiated by Atlantic Mariner, Inc., currently pending in the District of Maine. *See In the Matter of the Complaint of Atlantic Mariner, Inc. for Exoneration of Liability*, 01–CV–210–PC (D.Me.2001). He relies on *General Contracting & Trading Co., LLC v. Interpole*, 940 F.2d 20 (1st Cir.1991), in which the First Circuit held that a party waived personal jurisdiction when it filed a separate

suit in the same district court arising out of the same nucleus of operative facts.

Primorsk responds that it has not waived its objection. Although Primorsk filed a compulsory cross-claim in the District of Maine pursuant to 46 U.S.C. §§ 181–96, it expressly reserved its objection to personal jurisdiction when filing that claim. *See* Primorsk's Reply to Pl.'s Opp., Ex. A at 5. Moreover, Primorsk asserts that *General Contracting* holds that filing compulsory counterclaims does not constitute a waiver of objections to personal jurisdiction and that, at any rate, the case is inapposite because it involved two case filings in the *same* district court, whereas that is not the situation here. Primorsk argues that it simply cannot be true that by being compelled to file in the District of Maine, it has somehow waived its objections to personal jurisdiction in the District of Massachusetts.

Primorsk has not waived its objections to personal jurisdiction before the District of Massachusetts. *General Contracting* can be distinguished on a fundamental level: in *General Contracting*, two cases were filed in the same district court; in this matter, two cases were filed in two distinct district courts.[2] The rationale of *General Contracting* therefore does not apply.

Asserting personal jurisdiction over Primorsk is also inappropriate because Primorsk objected to personal jurisdiction in the District of Maine when filling its compulsory cross-claim. *See* 46 U.S.C. §§ 181–96. As the First Circuit explains in *General Contracting*, "courts should not ordinarily treat counterclaims—at least compulsory counterclaims—as waivers of

---

1. Service under Fed.R.Civ.P. 4(f)(3) is usually attempted *after* authorization by a court, so that the court may review the proposal in advance. *See Forum Financial Group*, 199 F.R.D. at 24.

2. A third case has been commenced in Canada. *Action In Rem Against the Ship, M.T. "Virgo" -BetweenJoseph Marcantonio -andThe Owners and All Others Interested in the Ship M.T. Virgo*, Court No. T–1516–01 (Federal Court of Canada, Trial Division, Ottawa).

jurisdictional objections." 940 F.2d at 24 (citations omitted); *see also Olin Corp. v. Fisons PLC*, 47 F.Supp.2d 151, 155 (D.Mass.1999) (holding that when a party objects to personal jurisdiction "in the same pleading in which it assert[s] cross-claims .... [the cross-claims do] not submit [the party] to personal jurisdiction" in that court). Accordingly, the compulsory cross-claim does not constitute a waiver of personal jurisdiction.

### C. Should the Default Judgment be Vacated?

■ Primorsk moves to vacate the default judgment because proper service is a prerequisite to personal jurisdiction. *See Hale v. McCall*, 425 F.Supp. 396, 399 (E.D.Tenn.1976) ("If this Court did not have jurisdiction when this action was commenced, it had no jurisdiction when a default was entered against the defendant. Lack of jurisdiction provides a meritorious defense to the plaintiff's action and provides good cause for setting aside the entry of default." (citation omitted)).

Marcantonio does not address this issue.

Fed. R. Civ P. 55(c) allows a district court, in its discretion, to vacate entry of default "for good cause shown." It is plain that improper service constitutes "good cause" to vacate a default judgment. Accordingly, the default judgment of January 8, 2002, is vacated.

### III. Marcantonio's Motion to Enlarge Time to Serve ALT

■ Marcantonio asks for an enlargement of time until June 1, 2002, to serve the second defendant, ALT. A P S International, Ltd., the process server retained by Marcantonio, represents that it will take 16 weeks to serve ALT in Cyprus, where it is located.

Cyprus, the location of ALT, is a signatory to the Hague Convention. Given the slow and stringent procedures that the Hague Convention requires for international service of process, the motion is granted.

### IV. Cracchiolo's Motion to Intervene

Giuseppe Cracchiolo moves to intervene by right, or, in the alternative, by permission. Fed.R.Civ.P. 24(a)(2); (b)(2). Cracchiolo was the fifth crew member for the *Starbound*, the ship allegedly struck and sunk by the *Virgo*. It was the practice of the *Starbound* crew to keep one man on shore for each trip, allowing time off. Each crew member received his share of the catch for each voyage, regardless of whether they were at sea for that catch.

Although there is no opposition, the motion is denied without prejudice to renewal after effective service has been made on the defendants. It does not appear that Cracchiolo served the defendants. Service is required under Fed.R.Civ.P. 24(c) ("A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5.").

### V.

Primorsk's motion to quash is granted and the default judgment of January 8, 2002, is vacated. Marcantonio's motion to enlarge time is granted. Cracchiolo's motion to intervene is denied without prejudice.

It is so ordered.