United States Court of Appeals
Fifth Circuit

**F I L E D**

July 9, 2004

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-30622
_____

BROKERWOOD PRODUCTS INTERNATIONAL (U.S.), INC.,

Plaintiff-Appellant/Cross-Appellee

v.

CUISINE CROTONE, INC.,

Defendant - Appellee,

EXPORT DEVELOPMENT CANADA,

Defendant-Appellee/Cross-Appellant

--------------------
Appeals from the United States District Court
for the Eastern District of Louisiana
(02-CV-1152)
--------------------

Before JONES, WIENER and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:[*]

Brokerwood Products International (U.S.), Inc. ("Brokerwood U.S.") appeals from a <u>forum non conveniens</u> dismissal of its lawsuit against two Canadian companies, Cuisine Crotone, Inc. ("Cuisine")and Export Development Canada ("EDC"). Because the district court did not abuse its discretion in dismissing the claims against Cuisine, we affirm its <u>forum non conveniens</u> ruling to that extent. We reverse, however, the district court's ruling

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

that EDC had waived its objections to personal jurisdiction, and we conclude that the district court should have dismissed the claims against EDC for lack of personal jurisdiction.

**Background**

Brokerwood U.S. is a Louisiana corporation affiliated with a Canadian corporation, Brokerwood Products International (Canada), Inc. ("Brokerwood Canada"). Both Brokerwood companies act as agents in selling Canadian-manufactured cabinet products. Brokerwood U.S. imports Canadian cabinets and sells them in the United States. Both Brokerwood corporations (and the other related entities) are owned by William and Janet Shiell, who are also Brokerwood U.S.'s sole employees. The Shiells own a total of six related companies, located both in the United States and Canada. The Shiells claim dual United States-Canadian citizenship, and both divide their time between Canada and the United States. While Brokerwood U.S. has an office in Louisiana, Brokerwood Canada is based in Montreal. A written letter from all six related Shiell companies, including Brokerwood U.S., indicates that the international head office for all the companies is in Montreal and that at least one of the officers can always be reached there.

As part of its business, Brokerwood Canada entered into an agency agreement with a company called Boiseries Crotone, Inc. Appellee Cuisine later assumed Boiseries Crotone's obligations

2

under this agreement.  Cuisine is a Canadian corporation; all of its employees work and live in Canada.

Under the agency agreement, Brokerwood Canada was to act as an exclusive agent for United States cabinetry sales.  The contract anticipated that Brokerwood Canada would use sub-agents, including Brokerwood U.S.  The relationship between the Brokerwood entities and Cuisine eventually turned sour, with each side alleging that the other failed to comply with their agreement.

Appellee-Cross-Appellant EDC is a Canadian Crown corporation solely owned by the Canadian government.  As part of an effort to promote Canadian exports, EDC provides credit risk insurance to Canadian manufacturers that export goods.  In November 2000, however, EDC stopped insuring invoices to Brokerwood U.S., essentially preventing Brokerwood U.S. from obtaining Canadian cabinets on credit.  Brokerwood U.S. alleges that Cuisine caused EDC's actions by providing EDC with false information about Brokerwood U.S.'s payment history.

Brokerwood U.S. originally sued Cuisine and EDC in Louisiana state court.  Cuisine timely removed the case to federal court.[1] This suit alleges that Cuisine (1) breached its contracts with Brokerwood U.S. by delivering products late and delivering sub-standard products; (2) improperly used Brokerwood U.S.'s customer

---

[1] EDC had not been served when Cuisine removed the case.

3

lists; and (3) violated the Louisiana Unfair Trade Practices and Consumer Protection Law, LA. REV. STAT. ANN. § 51:1401 et seq.

The Louisiana suit was followed by two others in Canada. Cuisine sued Brokerwood U.S. in June 2002, and on July 8, 2002, Brokerwood Canada sued Cuisine for commissions allegedly due under the Agency Agreement. In the Cuisine-brought suit, Brokerwood U.S. lost a challenge to the Canadian court's personal jurisdiction over it. In that suit, Brokerwood U.S. filed counterclaims, including some for failure to pay commissions.

In July 2002, around the time that the second Canadian suit was filed, EDC answered the Louisiana suit. Cuisine and EDC filed their initial disclosures shortly thereafter. Cuisine and EDC served discovery requests and filed a motion to strike Brokerwood U.S.'s jury demand. Little else happened until December 2002, when Brokerwood U.S.'s counsel filed a motion to withdraw, and Brokerwood U.S.'s current lawyers stepped in. Brokerwood U.S.'s new lawyers moved for a continuance of the April 2003 trial date. The district court granted this motion over Cuisine's and EDC's opposition.

In mid-December, Cuisine filed a motion to preclude, in which it sought to prevent Brokerwood U.S. from calling expert witnesses, from calling witnesses other than those already disclosed, and from presenting evidence on lost profits. The district court denied this motion.

After this denial, both Cuisine and EDC filed motions to

4

dismiss for <u>forum non conveniens</u>.  At the same time, EDC also filed a motion to dismiss for lack of personal jurisdiction.[2] The district court held a hearing on both motions.  In May 2003, the court denied EDC's personal jurisdiction motion, ruling that EDC had waived that issue, but granted both parties' motions to dismiss based on <u>forum non conveniens</u>.  In response, Brokerwood U.S. filed a motion for new trial.  After conducting another hearing, the district court denied Brokerwood U.S.'s motion. Brokerwood U.S. timely filed a notice of appeal.  EDC filed a notice of cross-appeal.

**Personal Jurisdiction: Waiver**

The district court concluded that EDC waived its personal jurisdiction objection by not moving to dismiss the case until February 2003 – seven months after it filed its answer and approximately one month after the district court denied Cuisine's motion to preclude.

Federal Rule of Civil Procedure 12(h)(1) provides, in part, that a defendant waives its personal jurisdiction defense if the defense "is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course."  EDC complied with Rule 12(h)(1) by including its objections to personal jurisdiction in its answer.

---

[2] Cuisine did not challenge the district court's jurisdiction.

5

Nevertheless, in several cases other circuits have concluded that a defendant may waive a properly-pleaded personal jurisdiction defense by failing to pursue the defense after including it in an answer.[3]  In reaching its waiver conclusion here, the district court relied on one of these cases, <u>Yeldell v. Tutt</u>, 913 F.2d 533 (8th Cir. 1990).  In <u>Yeldell</u>, the defendants "provided no more than a bald assertion in their answer that the court lacked personal jurisdiction over them." <u>Id</u>. at 539.  They proceeded through discovery, motions, a trial, and post-trial motions, all without raising their objections to personal jurisdiction.  <u>Id</u>.  In fact, the <u>Yeldell</u> defendants did not raise the issue again until appeal.  <u>Id</u>.  The Eighth Circuit concluded that the defendants had waived their jurisdictional defense, holding "that their conduct in delaying consideration of this threshold issue manifests an intent to submit to the court's jurisdiction." <u>Id</u>.

Conduct short of waiting until appeal to litigate the defense has resulted in waiver.  For example, a defendant waived its jurisdictional defense by suing the plaintiff in the objectionable forum in a second suit involving the same facts. <u>Gen. Contracting & Trading Co., L.L.C. v. Interpole, Inc.</u>, 940

---

[3]This circuit has discussed, in dicta, the existence of "the well-established rule that parties who choose to litigate actively on the merits thereby surrender any jurisdictional objections."  <u>PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)</u>, 260 F.3d 453, 459 (5th Cir. 2001).

F.2d 20, 23 (1st Cir. 1991).  In another case, the defendants filed their motion to dismiss for lack of personal jurisdiction only after their motion for summary judgment on their counterclaim had been denied.  Bel-Ray Co., Inc. v. Chemrite Ltd., 181 F.3d 435, 443-44 (3d Cir. 1999).  The court in Bel-Ray determined that the defendants had subjected themselves to jurisdiction by moving for summary judgment on their own claims for relief.  Id.  In the Ninth Circuit, a court may find waiver of personal jurisdiction if the defendant has complied with Rule 12 only when there are "other factors militating in favor of a finding of waiver."  Peterson v. Highland Music, Inc., 140 F.3d 1313, 1319 (9th Cir. 1998).  The Peterson court gave an example of such an other factor:

> if a defendant were to engage in "sandbagging" by raising the issue of personal jurisdiction on a motion to dismiss, deliberately refraining from pursuing it any further when his motion is denied in the hopes of receiving a favorable disposition on the merits, and then raising the issue again on appeal only if he were unhappy with the district court's ultimate decision, then we would not hesitate to find that the defendant had waived any right to pursue the defense.

Id. at 1318.

Here, the district court determined that EDC's actions waived its defense:

> [p]rior to filing the motion to dismiss EDC participated in a scheduling conference, provided initial disclosure, filed a motion to strike the jury demand (which was ruled on by the court), and filed interrogatories, requests for production, and a witness list.  EDC's actions in extensively participating in the litigation do not reflect a continuing objection to this court's power to

7

exercise jurisdiction over its person.

Although we do not state a bright-line rule, we disagree with the district court and conclude that EDC did not waive its personal jurisdiction objection. EDC's actions, particularly considering that it continued to note its objection to jurisdiction at the preliminary conference and in its discovery responses, do not rise to the level of "sandbagging," or participation that would cause waiver. EDC did not file any counterclaims, much less seek adjudication on the merits of any claims. A total of seven months passed between EDC's answer and its motion to dismiss, unlike the two and a half years of active litigation in another waiver case, Continental Bank, N.A. v. Meyer, 10 F.3d 1293, 1297 (7th Cir. 1993)(finding waiver). Furthermore, the case was dormant during most of that time. EDC raised its objections in a motion before the district court; it did not wait until appeal, like the defendant in Yeldell. We are left with only an allegation of strategic timing: that EDC waited until Cuisine's motion to preclude had been denied. This is not enough to waive EDC's jurisdictional challenge.

**The Substance of EDC's Challenge to Personal Jurisdiction**

The district court, having found waiver, did not reach the substance of EDC's personal jurisdiction challenge. We address the merits of that challenge now.

Personal jurisdiction over an out-of-state defendant is

8

determined by both the state's long-arm statute and the Due Process Clause.  ICEE Distrib., Inc. v. J&J Snack Foods, 325 F.3d 586, 591 (5th Cir. 2003).  The Louisiana long-arm statute "extends jurisdiction over nonresidents to the extent allowed by federal due process."  Id.  Thus, we need only examine whether the exercise of jurisdiction over EDC in Louisiana would offend due process.

Due process permits a court to exercise jurisdiction over a nonresident defendant only if two requirements are met.  First, the defendant must have sufficient minimum contacts with the forum so that he would reasonably anticipate being pulled into court in that forum.  Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc., 85 F.3d 201, 204 (5th Cir. 1996).  Second, the exercise of jurisdiction in the forum must not offend "traditional notions of fair play and substantial justice." Id. (quoting Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102. 113 (1987)).  Minimum contacts fall into two different categories: contacts sufficient to establish general personal jurisdiction in the forum and those sufficient to establish specific jurisdiction.  Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000).  Specific jurisdiction arises when the defendant "has purposefully directed its activities at the forum state and the 'litigation results from alleged injuries that 'arise out of or relate to' those activities.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

9

"General jurisdiction, on the other hand, will attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.'" Alpine View, 205 F.3d at 215 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984)).  Brokerwood U.S. contends that the district court had both specific and general jurisdiction over EDC.

Specific Jurisdiction

Brokerwood U.S. bases its specific jurisdiction argument on the idea that the effects of EDC's actions were felt in Louisiana.  In particular, Brokerwood U.S. argues that EDC's refusal to cover its receivables affected its ability to do business and that Brokerwood, as a Louisiana company, felt this harm in Louisiana.  Because of this connection, Brokerwood U.S. contends that jurisdiction is appropriate in Louisiana.  To support this contention, Brokerwood U.S. relies on the "effects test" found in Calder v. Jones, 465 U.S. 783 (1984).  In Calder, the Supreme Court concluded that libel defendants could be subject to personal jurisdiction in California because it was "the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California." Id. at 789.  Brokerwood U.S. omits, however, reference to other cases that indicate that a party may not rely solely on effects within the forum state.

10

Foreseeable effects are part of the specific jurisdiction analysis. But they are only one part: "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 212 (5th Cir. 1999). Furthermore, "the effects test is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." Allred v. Moore & Peterson, 117 F.3d 278, 286 (5th Cir. 1997).

Wien Air describes the effects test and also provides an example of when it can be used to establish jurisdiction. In Wien Air, the nonresident defendant

> performed several tortious actions outside of Texas directed towards [plaintiff] in Texas. These actions had foreseeable effects in the forum and were directed at the forum. These contacts take the form of letters, faxes, and phone calls to Texas by [defendant] whose contents contained fraudulent misrepresentations and promises and whose contents failed to disclose material information. For example, [plaintiff] provides a sworn affidavit from its employee Ms. Long stating that numerous calls, letters and faxes were made by [defendant] to [plaintiff] in Texas, and she avers that these calls contained the promises, assurances, and representations that are at the heart of the lawsuit.

Id. That situation contrasts with the situation here. Brokerwood U.S. has only alleged effects – damages – and has not alleged or presented any evidence that EDC intentionally directed its conduct toward Louisiana. Therefore, Brokerwood U.S. cannot establish that the district court had specific jurisdiction over

11

EDC.[4]

General Jurisdiction

General jurisdiction's "continuous and systematic contacts
test is a difficult one to meet, requiring extensive contacts
between a defendant and a forum."  Submersible Sys., Inc. v.
Perforadora Cent., S.A. de C.V., 249 F.3d 413, 419 (5th Cir.
2001) (citing 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶
108.41[3] (3d ed. 1999)).  Brokerwood U.S. attempts to meet this
standard by presenting a list of EDC's contacts with Louisiana.
According to Brokerwood U.S., EDC's continuous and systematic
contacts consist of sending three demand letters to Louisiana
companies – one written by EDC and the other two written by one
of EDC's agents; filing one lawsuit in Louisiana to recover
payment; negotiating a loan with a Louisiana entity; and
marketing itself internationally (including in Louisiana) on its
website.  These contacts do not reach the level of extensive
systematic and continuous contacts required for general
jurisdiction.[5]

---

[4]The plaintiff has the burden of establishing jurisdiction
over the nonresident defendant.  Gundle Lining, 85 F.3d at 204.

[5]See, e.g., Wilson v. Belin, 20 F.3d 644, 650-51 (5th Cir.
1994)(even if possibly continuous, defendant's contacts were not
substantial enough for general personal jurisdiction); Cent.
Freight Lines, Inc. v. APA Transp. Corp., 322 F.3d 376, 381 (5th
Cir. 2003) (no general jurisdiction in Texas even though
defendant "routinely arranges and receives interline shipments to
and from Texas and apparently sends sales people to the state on
a regular basis to develop business, negotiate contracts, and
service national accounts").

12

Brokerwood U.S. has not established that EDC was subject to personal jurisdiction in Louisiana.  Thus, suit in Louisiana was improper, and the claims against EDC should have been dismissed for lack of personal jurisdiction.

**Forum non conveniens**

The forum non conveniens doctrine focuses on convenience. Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 342 (5th Cir. 1999).  The doctrine "presupposes at least two forums where the defendant is [amenable] to process and simply furnishes criteria for choice between them."  Id.  With this choice, the plaintiff's initial choice of forum is usually respected.  Id. at 342.  As a doctrine, forum non conveniens is committed to the district court's discretion.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981).  That court's forum non conveniens decision, therefore, "deserves substantial deference" and is only reversed for a clear abuse of discretion.  Baumgart v. Fairchild Aircraft Corp., 981 F.2d 824, 835 (5th Cir. 1993) (quoting Piper Aircraft, 454 U.S. at 257).

A forum non conveniens inquiry has several steps.  First, the defendant invoking the doctrine must establish that an alternate forum is both available and adequate.  An available forum is one where the case and all the parties can come within its jurisdiction.  Alpine View, 205 F.3d at 221.  An adequate forum is one in which "differences in that forum's laws would not

deprive the plaintiff of all remedies or result in unfair treatment." Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G., 955 F.2d 368, 372 (5th Cir. 1992).

Having established an available and adequate forum, the defendant must then show that certain private factors support dismissal. McLennan v. Am. Eurocopter Corp., Inc., 245 F.3d 403, 424 (5th Cir. 2001). These private factors are:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; (3) probability of an opportunity to view the premises, if view would be appropriate to the action; and (4) other factors affecting the ease, speed, and expense of trial or the enforceability of a judgment if obtained.

Baumgart, 981 F.2d at 835-36 (footnote omitted). When examining these factors, the court should also consider the timeliness of the defendant's motion. Id.

If these private interest factors do not indicate that another forum is better suited for trial of the case, the court should then examine certain public interest factors. Baumgart, 981 F.2d at 837. If the private interest factors do, however, weigh in favor of dismissal, then the court does not need to consider the public ones. Id. The public interest factors are:

> [T]he administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum

14

with jury duty.

<u>Dickson Marine</u>, 179 F.3d at 342.

In this case, the district court concluded that Canada was both an available and adequate forum.  Continuing on, the district court determined that the private factors weighed in favor of dismissal and that the litigation's focal point was Canada.  Although it was not required to, the district court also considered the public interest factors and concluded that Canadian courts would be "in a better position to streamline the litigation."

**<u>Available and Adequate Forum</u>**

Brokerwood U.S. first challenges the district court's conclusion that Canada is an available and adequate forum. Concerning availability, it does not contend that Cuisine and EDC cannot come within the Canadian court's jurisdiction, but rather that Brokerwood U.S. should not have to submit to jurisdiction, which it challenged (and lost) in one of the other Canadian suits.  Nevertheless, Brokerwood U.S.'s preference not to sue in Canada does not make Canada an unavailable forum when the defendants are both subject to personal jurisdiction there.

Brokerwood U.S. also argues that Canada is not an adequate forum because the Canadian court has the discretionary authority to order Brokerwood U.S. to post a cost bond.  Yet, the possibility of a bond is not the kind of difference that makes a

15

forum inadequate. Mere differences in the foreign forum's law do not automatically render a foreign forum inadequate, so long as the plaintiff is not deprived of all remedies, or is not limited to a clearly unsatisfactory remedy. Gonzalez v. Chrysler Corp., 301 F.3d 377, 380 (5th Cir. 2002). In fact, a forum may be adequate even if the party's claim would be economically unviable in that forum. See id. at 383. In light of this precedent, a discretionary bond, while possibly increasing the cost of litigation, does not deprive Brokerwood U.S. of a remedy or cause it to be treated unfairly. The possibility of a bond does not make Canada an inadequate forum, and the district court did not clearly abuse its discretion in concluding that Canada was both an available and adequate forum.

**Private Interest Factors**

The dispute over the private interest factors primarily comes down to two factors – the availability of witnesses and timeliness.

Of the two, timeliness causes us more concern. A defendant must make its forum non conveniens motion "within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed and become known or reasonably knowable to the defendant." In re Air Crash Disaster near New Orleans, La., 821 F.2d 1147, 1165 (5th Cir. 1987) (en banc), vacated on other grounds sub nom., Pan Am. World Airways, Inc. v.

16

Lopez, 490 U.S. 1032 (1989).  A defendant's delay in filing a forum non conviens motion will not result in waiver, but delay does weigh heavily against granting the motion.  Id.

The parties extensively argued about timeliness in the hearing before the district court.  Although the district court did not expressly address timeliness in the order granting the forum non conveniens motion or on the motion to reconsider, in light of the extensive argument, we agree with the parties that the court implicitly denied Brokerwood U.S.'s timeliness argument.

The timeliness issue presents a close call, with strong arguments running in both directions.  Although this case had been on file for some time, it had been fairly inactive, with little discovery taking place.  As Brokerwood U.S. argues, EDC's and Cuisine's actions might give the appearance of gamesmanship because they did not file their motions until after the court denied Cuisine's motion to preclude much of Brokerwood U.S.'s evidence.  In their defense, EDC and Cuisine argue that they did not realize the similarities in the cases until after Brokerwood U.S. supplemented its discovery responses to specify that it sought recovery for some of the same commissions it had sought in the Canadian lawsuit.

Turning to witnesses, the district court determined that the location and availability of witnesses weighed in favor of the Canadian forum.  Challenging this determination, Brokerwood U.S.

17

contends that its pre-trial order inserts included a list of its own will-call witnesses, at least half of whom resided closer to Louisiana than to Canada.  Because many of these witnesses were in states other than Louisiana, Brokerwood U.S. cites Rivendell Forest Products, Ltd. v. Canadian Pacific Ltd., 2 F.3d 990, 993 n.5 (10th Cir. 1993), to argue that witness availability is a neutral factor.  There are some similarities.  The Rivendell court noted that when much of its case's proof was in Minnesota, it would be difficult to see how British Columbia would be more convenient than Colorado, the plaintiff's selected forum.  Id. Brokerwood U.S. similarly argues that some of its witnesses, as the list reflects, are in states other than Louisiana.  But at the time of the motion, Brokerwood U.S. had not supplemented its witness list and the location of these witnesses was not before the district court.

More importantly, Brokerwood U.S.'s argument ignores the fact that Cuisine's and EDC's employees were all in Canada, and that the Shiells – regardless of whether they are domiciled in Montreal or New Orleans – split their time between Canada and Louisiana.  The district court did not err in concluding that the availability of witnesses suggests that Canada would be a better forum.

The district court balanced the relevant private interest factors and concluded that this case belongs in Canada.  Although close, timeliness does not so alter the balance of the private

interest factors as to justify overriding the district court's discretion.[6]  Thus, we cannot conclude that the district court clearly abused its discretion in dismissing this case.

**Conclusion**

For these reasons, we vacate the district court's order denying EDC's motion to dismiss for lack of personal jurisdiction and remand to the district court to dismiss the claims against EDC.  We affirm the district court's order dismissing the claims against Cuisine based on forum non conveniens.

VACATED in part, AFFIRMED in part.

---

[6]Because the private interest factors favor dismissal, we do not examine the public interest factors.  Baumgart, 981 F.2d at 837.