IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| In re the Parentage of:<br><br>INFANT CHILD F. AND UNBORN CHILD F.,<br><br>      Child,<br><br>MICHAEL HUNTER,<br><br>      Petitioner and Alleged<br>      Father,<br><br>      v.<br><br>MICHELLE FEREBAUER,<br>ROBERT FEREBAUER,<br><br>      Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 30768-9-III<br><br><br><br>PUBLISHED OPINION |

BROWN, J. — Michael Hunter's appeal concerns the paternity of the child Michelle Ferebauer gave birth to in Utah and immediately placed for adoption there in 2010. After Mr. Hunter unsuccessfully petitioned to intervene in the Utah adoption proceedings and did not appeal, the Washington superior court ruled his paternity petition was moot. Mr. Hunter contends the court erred in dismissing his paternity petition, giving full faith and credit to the Utah ruling, failing to enter findings of fact and conclusions of law, failing to enter a temporary order requiring genetic testing, denying his request to add the adoptive parents as indispensable parties, and allowing Ms. Ferebauer to participate

No. 30768-9-III
*In re the Parentage of Infant Child F.*

in the proceedings. We conclude the superior court did not err in giving full faith and credit to the Utah court when dismissing Mr. Hunter's paternity petition without written findings. Therefore, we do not reach his other contentions, and affirm.

## FACTS

Ms. Ferebauer met Mr. Hunter at work in February 2009. She was married to Robert Ferebauer at the time, but developed an intimate relationship in May or June 2009 with Mr. Hunter. In July 2009, Ms. Ferebauer became pregnant with a March 2010 due date. She informed Mr. Hunter that he was the father. Ms. Ferebauer petitioned to dissolve her marriage with Mr. Ferebauer and moved in with Mr. Hunter.[1] Mr. Hunter has two daughters from a prior marriage whom he and his prior spouse share custody. The Ferebauer-Hunter relationship soon ended due to Ms. Ferebauer's fears that Mr. Hunter would not be a good father. Mr. Hunter encouraged an abortion, but Ms. Ferebauer preferred adoption. Mr. Hunter at first agreed to the adoption and signed a consent to adopt and relinquishment of parental rights in January 2010. Mr. Hunter and Ms. Ferebauer then disagreed over whether the adoption should be open and he revoked his consent.

In February 2010, Ms. Ferebauer took a leave of absence from work and decided to go to Utah. She e-mailed Mr. Hunter, notifying him that she was going to Utah to be with friends and have the baby. Mr. Hunter responded that he did not know if he would ever see her or the baby again, but he wished Ms. Ferebauer luck.

---

[1] The petition for dissolution was later dismissed.

2

No. 30768-9-III
*In re the Parentage of Infant Child F.*

On March 2, 2010, Ms. Ferebauer gave birth to a baby girl in Utah. Both Mr. Ferebauer and Ms. Ferebauer relinquished their parental rights and gave consent for adoption. Under Utah law, Mr. Ferebauer was the presumed father. *See* Utah Code Ann. § 78B-15-204(1)(a) ("A man is presumed to be the father of a child if . . . he and the mother of the child are married to each other and the child is born during the marriage."). To overcome this presumption, the unmarried biological father must sign a voluntary declaration of paternity. Utah Code Ann. § 78B-15-302, -303. Utah terminated all parental rights and approved adoption of Infant F to Washington adoptive parents, with whom Infant F has resided since birth.

Mr. Hunter filed a petition to establish paternity in Utah on June 23, 2010. On July 15, 2010, he sought to intervene or set aside the Utah order terminating his parental rights. On December 20, 2010, the Utah court entered a memorandum decision denying Mr. Hunter's motion to intervene. The court found Mr. Hunter never submitted a voluntary declaration of paternity that he executed with the birth mother as required by Utah law. Thus, the court concluded Mr. Hunter did not overcome Mr. Ferebauer's presumption of paternity and therefore, did not have standing to intervene. On March 23, 2011, the Utah court entered a final order denying Mr. Hunter's motion to intervene. Mr. Hunter did not appeal the Utah final order.

On a somewhat parallel course, Mr. Hunter petitioned in Washington to establish paternity. He served his Franklin County petition on the Ferebauers on May 14, 2010. The Ferebauers responded to Mr. Hunter's Washington petition, requesting dismissal in

light of the Utah proceedings. After a November 2010 court commissioner's ruling that Washington had jurisdiction under Washington's Uniform Child Custody Jurisdiction Act, chapter 26.27 RCW and/or the federal Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A, the Ferebauers requested revision by a superior court judge. The Ferebauers argued the court should grant full faith and credit because Utah had jurisdiction and was continuing to exercise it. In December 2010, Mr. Hunter sought to join the adoptive parents and the child to the Washington action, and he asked for DNA testing. On January 11, 2011, a superior court judge stayed the Washington action pending a final order in Utah. The Washington court lifted the stay on July 21, 2011.

Finally, on December 12, 2011, the trial court dismissed the action as moot given Utah's ruling and Mr. Hunter's failure to appeal that ruling. The judge clarified, "I kept the case open in the event that Utah reversed itself in their appellate process and encouraged counsel to go back down [t]here to Utah and pursue the arguments that they had. They didn't do that. They abandoned the process and did not exhaust their remedies in Utah, and so this is where I find myself now. There's no possibility that Utah is going to reverse themselves and so I think that makes this case moot at this point." Report of Proceedings (Dec. 12, 2011) at 44-45. Mr. Hunter appealed.

4

## ANALYSIS

The issue is whether the trial court erred in dismissing Mr. Hunter's paternity petition as moot. Mr. Hunter contends the court erred in giving Utah's order full faith and credit.

We generally review a decision to dismiss for abuse of discretion. *Spokane County v. E. Wash. Growth Mgmt. Hearings Bd.*, 173 Wn. App. 310, 323-24, 293 P.3d 1248 (2013). Dismissal for mootness, however, is a question of law this court reviews de novo. *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 29, 891 P.2d 29 (1995). Additionally, issues involving whether another state's judgment should be given full faith and credit by our courts are issues of law and reviewed de novo. *SCM Grp. USA, Inc. v. Protek Mach. Co.*, 136 Wn. App. 569, 574, 150 P.3d 141 (2007).

As an initial matter, Mr. Hunter contends the court erred in not entering findings of fact and conclusions of law when dismissing his petition. CR 52(a)(2)(B) states that findings and conclusions are required "with all final decisions in adoption, custody, and divorce proceedings." But, under CR 52(a)(5)(B), findings and conclusions are not required for "decisions of motions under rules 12 or 56 *or* any other motion, except as provided in rules 41(b)(3) and 55(b)(2) [neither apply here]. Mr. Hunter petitioned to establish paternity. The matter was decided on motions with the court ultimately dismissing based on mootness. Accordingly, findings and conclusions were not required. Moreover, since our review is de novo, findings and conclusions are unnecessary for our analysis.

5

A case is moot if the court cannot provide the basic relief originally sought or can no longer provide effective relief. *Blackmon v. Blackmon*, 155 Wn. App. 715, 719, 230 P.3d 233 (2010). If a sister state's judgment is given full faith and credit in that there is no relief available in Washington, then the Washington proceedings would be rendered moot. *See J.E.W. v. T.G.S.*, 935 So.2d 954, 962 (Miss., 2006) (Mississippi court gave full faith and credit to South Carolina custody decision, rendering proceedings in Mississippi moot).

The full faith and credit clause of the United States Constitution, U.S. CONST. art. IV, § 1, generally requires a state to give a foreign judgment at least the res judicata effect which would be accorded in the state which rendered it. *Durfee v. Duke*, 375 U.S. 106, 109, 84 S. Ct. 242 (1963). Full faith and credit requires that once an action is pursued to a final judgment, that judgment is conclusive in every other court as it is in the court which rendered the judgment. *State v. Berry*, 141 Wn.2d 121, 127-28, 5 P.3d 658 (2000). "'The Full Faith and Credit Clause provides a means for ending litigation by putting to rest matters previously decided between adverse parties in any state or territory of the United States.'" *Id.* at 127 (quoting *In re Estate of Tolson*, 89 Wn. App. 21, 29, 947 P.2d 1242 (1997)).

A party can collaterally attack a foreign judgment if the court did not have jurisdiction. *Berry*, 141 Wn.2d at 127-28. A party attacking a foreign judgment has the burden of establishing lack of jurisdiction. *Williams v. Steamship Mut. Underwriting Ass'n, Ltd.*, 45 Wn.2d 209, 213, 273 P.2d 803 (1954) (Washington courts presume a

6

court of general jurisdiction in a sister state has jurisdiction over the cause and the parties "unless disproved by extrinsic evidence or by the record itself.").

Utah courts have jurisdiction over adoption where the child was born in the state and/or resides in the state on the day the adoption petition is filed. Utah Code Ann. § 78B-6-105(1). Furthermore, Utah has "jurisdiction to hear and decide a petition to terminate parental rights in a child if the party who filed the petition is seeking to terminate parental rights in the child for the purpose of facilitating the adoption of the child." Utah Code Ann. § 78B-6-112(1). Because Infant F was born in Utah and resided in Utah on the day of the adoption petition and because termination of all parental rights was requested in Utah to facilitate the adoption, Utah has jurisdiction to decide the matter. Mr. Hunter has not met his burden to disprove jurisdiction.

As discussed above, in Utah an unwed biological father may file a declaration of paternity under Utah Code Ann. § 78B-15-302 to establish paternity and thus be a necessary party to contest adoption proceedings. This declaration must be signed by the birth mother and may be completed and signed any time after the birth of the child, but "may not be signed or filed after consent to or relinquishment for adoption has been signed." Utah Code Ann. § 78B-15-302(1)(b), (8).

Here, Mr. Hunter filed a declaration of paternity but it did not include Ms. Ferebauer's signature. Additionally, it was filed after the consent for adoption. Hence, under Utah law, Mr. Hunter failed to establish paternity in Utah; as such, he did not have standing to contest the adoption. Mr. Hunter did not appeal this ruling, making it a final

7

No. 30768-9-III
*In re the Parentage of Infant Child F.*

order. A final judgment in one state, rendered by a court with jurisdiction over the subject matter and parties governed by the judgment, controls in other states to the same extent as in the state where it was rendered. *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 223, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998).

The trial court properly conferred full faith and credit to Utah's ruling and, thus, properly dismissed the Washington proceeding as moot. Accordingly, Mr. Hunter's claims regarding due process in Washington, joinder of the adoptive parents to the proceedings, a temporary order for genetic testing, and Ms. Ferebauer's participation in the Washington proceedings are equally moot, as we cannot provide relief on these matters. *Blackmon*, 155 Wn. App. at 719-20.

Affirmed.

Brown, J.

I CONCUR:

Korsmo, C.J.

8

No. 30768-9-III

FEARING, J. (concurring) — An appeals court judge is taught to avoid placing in an opinion facts unnecessary to the decision. I violate this instruction and write separately to voice the inequity suffered by appellant Michael Hunter. I also write separately because I consider the appeal merits additional analysis.

The parties agree that Michael Hunter is the father of infant F, despite the mother, Michelle Ferebauer, being married to another. The infant was conceived in Washington State. Over a period of months thereafter, Ferebauer and Hunter participated in an unsettled relationship. On February 24, 2010, Ferebauer sent an e-mail message to Hunter informing him that "I have decided to go to Utah to have the baby . . . . I'll contact you when I get back." Report of Proceedings (Jan. 11, 2011) at 36. She did not alert Hunter of her intent to terminate his parental rights in Utah nor to place their child for adoption in that state. Ferebauer knew that Hunter wished to participate in raising the child. Utah is nationally known as the state where unmarried biological fathers' rights to children are not protected.[1]

_____

[1] *See* Samuel C. Johnston, Comment, *Unwed Putative Fathers: Beware Utah Adoption Law*, 2013 UTAH L. REV. 104, 104-05 (2013) ("Wyatt's story and the allegations in his federal claim raise a number of questions regarding adoptions and adoption law in Utah, especially when the adoptions involve unwed fathers and occur across state lines. Wyatt is just one of many out-of-state unwed fathers, in recent years, to be entangled by Utah's adoption laws. Each story is slightly different, but in each, a mother with little or no lifetime ties to Utah gave her baby up for adoption in Utah with

On March 2, 2010, infant F was born in Salt Lake City, Utah. On March 3, 2010, not yet knowing his child had been born, Michael Hunter filed this petition, in Washington State, to establish his paternity to infant F. He unsuccessfully sought to gain an acceptance of service of the petition from Ferebauer's Washington attorney. Hunter did not locate Michelle Ferebauer for purposes of service until May 14, 2010, when she was served at a gym in the Tri-Cities.

---

the help of a Utah agency and attorney. In each case, the father tried to comply with Utah law or the laws of his home state but fell short in some legally significant way. Only in the most recent case did an unwed putative father prevail, making the current state of the law even more uncertain for the rights of unwed out-of-state fathers."); Marjorie Cortez, *Legislative panel mulls national putative father registry*, Deseret News, June 9, 2013, *available at* http://www.deseretnews.com/article/865581919/Legislative-panel-mulls-national-putative-father-registry.html?pg=all (last visited Sept. 16, 2013) ("In recent years, a number of court cases in Utah have involved pregnant, unmarried women from other states giving birth in Utah and placing the children for adoption without the knowledge or consent of the biological father."); Dennis Romboy, *Do Utah's adoption-friendly laws make it anti-birth father?*, Deseret News, Feb. 6, 2012, *available at* http://www.deseretnews.com/article/700222819/Do-Utahs-adoption-friendly-laws-make-it-anti-birth-father.html (last visited Oct. 17, 2013) ("Salt Lake adoption attorney Wes Hutchins said Utah's laws invite 'forum shopping' among single pregnant women looking a favorable place for an adoption and allow women to hide from out-of-state birth fathers."); Brooke Adams, *Stopping an adoption: In Utah, unwed fathers rarely win*, The Salt Lake Tribune, December 24, 2011, *available at* http://www.sltrib.com/sltrib/home2/52592820-183/utah-adoption-fathers-registry.html.csp (last visited Oct. 22, 2013) ("[S]ome of the more than 25 higher court rulings [against biological fathers] in Utah since 1959 have turned on other missteps in the process, including some one justice described as 'very minor issues of noncompliance.'").

Meanwhile in Utah, Michelle Ferebauer filed a petition in court, on March 4, 2010, to terminate her rights, the rights of her husband, and the rights of Michael Hunter to infant F. In the Utah court petition, Ferebauer alleged she was a Utah resident. The petition further alleged that, under Utah law, the consent of Hunter was not required and that he had forfeited or waived all rights with regard to the child, including the right to notice. On the same day, and without notice to Michael Hunter, the Utah District Court exercised jurisdiction over Infant F by entering a court order which stated in part, "It is [h]ereby [o]rdered, [a]djudged, and [d]ecreed that the [r]ights of Michelle Gemstsen Ferebauer, Robert Ferebauer,[2] Michael Hunter and any other putative birth fathers are forever waived, surrendered and terminated." Clerk's Papers (CP) at 688. Michelle Ferebauer and her husband consented to the termination of their rights.

Infant F was adopted by Washington parents. So that the adopting parents could bring the child to Washington State, Michelle Ferebauer's Utah counsel wrote a letter to Interstate Compact on the Placement of Children (ICPC) administrators in both Utah and Washington, stating that "[b]oth parents have consented to the adoption." CP at 550. The ICPC form signed by Ferebauer claimed that the father of the infant was Ferebauer's husband. In the form, Michelle Ferebauer gave her residence address as being the office address of her Utah counsel.

---

[2] The husband of Michelle Ferebauer.

No. 30768-9
*In re Parentage of Infant Child F.*

By May 2010, if not earlier, Michelle Ferebauer returned to the State of Washington. Ferebauer had not resigned from her employment in Washington State. Instead, she took maternity leave and later returned to her Washington job.

On June 23, 2010, Michael Hunter filed, in Utah court, a petition to establish his paternity. On July 15, 2010, Hunter also filed, in the earlier Utah action initiated by Ferebauer, a motion to intervene and a motion to vacate the order terminating his parental rights. On March 23, 2011, the Utah District Court denied the motion to intervene. The court ruled that Hunter lacked standing to challenge the prior termination order, since he failed to timely file a declaration of paternity with the Utah courts. As part of his motion to intervene, Hunter argued the same contentions forwarded before our superior court in support of this paternity action. Among other contentions, Hunter argued his due process rights were violated when his parental rights were terminated without notice, and Michelle Ferebauer committed fraud. Michael Hunter did not file an appeal with the Utah Court of Appeals.

A parent holds a fundamental liberty interest, protected by the Fourteenth Amendment, in the care, custody and control of a child. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923). State intervention to terminate the relationship between a parent and his child must be accomplished by procedures meeting the

4

requisites of the due process clause. *Santosky*, 455 U.S. at 753, 768; *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 37, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981). Unfortunately, these principles fail Michael Hunter because he litigated his rights in Utah, and forwent his right to appeal the unfavorable decision to the Utah Court of Appeals. I thus agree with the majority that we must afford the Utah court's orders full faith and credit.

The full faith and credit clause directs that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. CONST. art. IV, § 1; *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998). The full faith and credit clause of the Constitution precludes any inquiry into the merits of the other state's cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based. *Milliken v. Meyer*, 311 U.S. 457, 462, 61 S. Ct. 339, 85 L. Ed. 278 (1940) (citing *Fauntleroy v. Lum*, 210 U.S. 230, 28 S. Ct. 641, 52 L. Ed. 1039 (1908)). Whatever mistakes of law may underlie the judgment, it is conclusive as to all matters decided. *Milliken*, 311 U.S. at 462.

To our knowledge, Michael Hunter had no significant contacts with Utah. Thus, Michael Hunter may have challenged, for lack of jurisdiction, in Washington courts, the Utah court's order terminating his parental rights. *Estin v. Estin*, 334 U.S. 541, 549-50, 68 S. Ct. 1213, 92 L. Ed. 1561 (1948); *Milliken*, 311 U.S. at 462; *Conlon ex rel. Conlon v. Heckler*, 719 F.2d 788 (5th Cir. 1983). The question of a parent's paternity may not be

5

resolved in a state in which the parent lacks contacts. *Id.* at 794, 797. But he lost that opportunity when he filed a separate action in Utah to establish his paternity, and also when he brought a motion to intervene and vacate the order terminating his parental rights in the suit filed by Ferebauer.

Because the requirement of personal jurisdiction represents an individual right, it can, like other such rights, be waived. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982). A defendant waives a jurisdictional defense by suing the plaintiff in the objectionable forum in a second suit involving the same facts. *Brokerwood Prods. Int'l, Inc. v. Cuisine Crotone, Inc.,* 104 Fed. App'x. 376, 380 (5th Cir. 2004); *PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland),* 260 F.3d 453, 460 (5th Cir. 2001); *Andrew Greenberg, Inc. v Sirtech Can., Ltd.,* 79 A.D.3d 1419, 1423, 913 N.Y.S.2d 808 (2010). A defendant also waives a jurisdictional defect by choosing to actively litigate an issue on the merits. *PaineWebber,* 260 F.3d at 460; *Praetorian Specialty Ins. Co. v. Auguillard Constr. Co., Inc.,* 829 F. Supp. 2d 456, 464 (W.D. La. 2010); *In the Matter of Sayeh R.,* 91 N.Y.2d 306, 319, 693 N.E.2d 724 (1997); *Mikulski v. Mikulski,* 2 Cal. App. 3d 1047, 1050, 83 Cal. Rptr. 15 (1969).

Michael Hunter was likely not subject to personal jurisdiction in the Utah courts at the time Michelle Ferebauer filed her petition to terminate parental rights. When the plaintiff relies on general personal jurisdiction, the court must have jurisdiction over the

6

defendant at the filing of the suit. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Marathon Oil*, 182 F.3d at 295. General personal jurisdiction is distinguished from specific personal jurisdiction, when the nonresident's contacts with the forum state arise from or are directly related to the pending cause of action. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *General Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir. 1991). The nonresident's availing himself of the forum state's courts to assert the merits of a related claim is one example of specific personal jurisdiction. Most courts, who have addressed the issue, have ruled that specific personal jurisdiction may be based upon the actions of the nonresident defendant after the filing of the plaintiff's suit. *Brokerwood Prods.*, 104 Fed. App'x at 379-80; *General Contracting*, 940 F.2d 20; *Praetorian*, 829 F. Supp. 2d at 464; *Endless Pools, Inc. v. Wave Tec Pools, Inc.*, 362 F. Supp. 2d 578, 583-84 (E.D. Pa. 2005); *Educ. Testing Serv. v. Katzman*, 631 F. Supp. 550, 554-57 (D. N.J. 1986).

Our case differs from other reported decisions in that the Utah court terminated Michael Hunter's parental rights even before Hunter waived lack of personal jurisdiction by filing his separate Utah action and by asserting his rights in the suit filed by Ferebauer.

No. 30768-9
*In re Parentage of Infant Child F.*

Nevertheless, the same reasoning applies as attaches to the reported decisions. The Utah court addressed anew Michael Hunter's parental rights when he filed motions to intervene and to vacate the order of termination. By filing and arguing the motions, Hunter was afforded a hearing on his contentions after the Utah court gained personal jurisdiction.

 

Fearing, J.

Fearing, J.

8