
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SERGIO E. HERRERA, | ) | |
| | ) | No. 34646-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SANDRA VILLANEDA, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Finding that Benton County was an inconvenient forum for a

parenting dispute involving one of Sergio Herrera's and Sandra Villaneda's children, the

superior court declined to exercise jurisdiction despite Washington's exclusive,

continuing jurisdiction over the child under the WUCCJEA.[1]  Sergio Herrera appealed,

---

[1] Washington State's Uniform Child Custody Jurisdiction and Enforcement Act, chapter 26.27 RCW.

unsuccessfully moving this court to stay the superior court's order. Without the stay, proceedings to determine a parenting plan for the child proceeded in an Oregon court and were resolved.

Under RCW 26.27.521, we accord full faith and credit to an order issued by another state consistent with chapter 26.27 RCW. In cases like this, the decision on a motion to stay is often critical, since resolution elsewhere of the child custody dispute will render the merits of the declination decision moot. This is the intended result under the UCCJEA,[2] which never denies a parent a forum but strives to avoid protracted jurisdictional disputes and relitigation. Mr. Herrera's remedy, if dissatisfied with the Oregon court's orders, is to appeal them in Oregon. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Sergio Herrera and Sandra Villaneda have two children together. Their older child, a son, was born in May 2006. The parties were not married at the time of the birth, and within a matter of months the State filed an action in Benton County to establish paternity. The judgment and order determining parentage in that action was entered in March 2007 and established that Washington was the "home state" for the boy under chapter 26.26 RCW, that Mr. Herrera was his biological father, and that Ms. Villaneda would have primary residential custody.

---

[2] UNIF. CHILD CUSTODY JURISDICTION & ENF'T ACT, 9 pt. 1A U.L.A. 649 (1999).

The parties married in 2011, while both still resided in Washington. In 2013, Ms. Villaneda and the parties' then 7-year-old son moved to Hillsboro, Oregon, with Mr. Herrera's permission, expecting Mr. Herrera to follow. Mr. Herrera changed his mind and stayed in Washington, but Ms. Villaneda and the son continued to reside in Oregon.

The parties' second child, a daughter, was born in April 2014. Although a resident of Oregon at the time, Ms. Villaneda returned to Kennewick for her daughter's birth. After the birth, the daughter lived continuously with her mother in Oregon.

In December 2014, Ms. Villaneda filed for legal separation from Mr. Herrera in Oregon. She asked the Oregon court to enter child custody orders addressing both children. Mr. Herrera was served with pleadings in the Oregon action in early January 2015.

In addition to responding to the Oregon proceeding in February 2015, Mr. Herrera commenced his own action in Benton County a month later, petitioning for entry of a residential schedule/parenting plan for his son. He relied for the Washington court's exclusive, continuing jurisdiction on the earlier-entered judgment and order. Mr. Herrera did not seek a residential schedule/parenting plan for Ms. Villaneda's then 11-month-old daughter in the Benton County action. He questioned at the time whether he was her father and filed a contemporaneous Benton County action to de-establish parentage. That action was soon dismissed on the basis that Washington had no jurisdiction over Ms. Villaneda's daughter. Custody of the daughter was addressed by the Oregon court, which

3

determined that Oregon was her home state and had exclusive, continuing jurisdiction over her custody.

Ms. Villaneda moved the Benton County court to dismiss Mr. Herrera's petition on the basis that Benton County was an inconvenient forum. In a June 2015 order, Commissioner Joseph Scheider denied her motion as improper procedure, pointing out that Washington had exclusive, continuing jurisdiction over the boy that it had not declined to exercise. The superior court denied Ms. Villaneda's motion to revise the court commissioner's decision.

Ms. Villaneda then pursued proper procedure, moving the court to decline to exercise its jurisdiction because of the inconvenience of the forum. As one basis for the motion, she pointed out that before Mr. Herrera filed his petition she had asked the Oregon court to make parenting provisions that would apply to both children. In a responsive declaration, Mr. Herrera argued that the court should not base its decision on the fact that the Oregon court had jurisdiction over visitation with Ms. Villaneda's daughter, since she "may or may not be my daughter. She was conceived after our separation, when Sandra was seeing other men." Clerk's Papers (CP) at 257. He stated that DNA[3] testing was in process to determine the girl's parentage.

---

[3] Deoxyribonucleic acid.

The motion to decline jurisdiction was argued in August, and in an oral decision delivered on August 13, 2015, Commissioner Schneider explained why eight statutory factors did or did not weigh in favor of declining jurisdiction of parenting issues involving the parties' son. Addressing Ms. Villaneda's argument that having different courts establish parenting provisions for the two siblings presented inconvenience, the commissioner stated:

> There's been no establishment of paternity . . . if the father is determined not to be the father of the youngest child then that becomes a moot issue okay. So we don't have to try to have pair parenting plans between the two parties.

CP at 192.

Mr. Herrera's lawyers prepared and presented an order denying Ms. Villaneda's motion that Commissioner Schneider signed on December 1, 2015. The proposed order included findings on the eight statutory factors that Commissioner Schneider had addressed in his oral ruling. But because it made no mention of the unresolved paternity issue involving Ms. Villaneda's daughter, the commissioner added a handwritten finding: "Father denied paternity as to youngest child and that paternity is not yet established." CP at 127.

On December 8, 2015, Ms. Villaneda moved the court for reconsideration of its December 1 order, informing the court that after the hearing on her July 2 motion, private DNA testing had established Mr. Herrera's parentage of their daughter. Denying the

5

motion, the court stated it could not consider new evidence for purposes of the motion for reconsideration, but Ms. Villaneda's evidence of Mr. Herrera's parentage "could be the basis for a motion to consider the jurisdictional issues." CP at 129.

In January 2016, Ms. Villaneda again moved the Benton County court to decline jurisdiction over the parties' son, emphasizing the fact that Mr. Herrera's parentage of their daughter was now clear. She argued that "having one State with its laws decide what visitation looks like relative to [our son] and a different state with different laws decide what father's visitation should be relative to [our daughter], triggers potential chaos, not only in the near-term, but likely in the long-term." CP at 540. She argued that if the court had known Mr. Herrera was the father of both children living in Oregon, it was "likely that [the] court would have interpreted the factors [from the WUCCJEA] differently." CP at 541.

Commissioner Schneider heard oral argument of the motion on January 26, 2016, at the conclusion of which he orally granted the motion, attaching importance to the fact that "[w]e now know that Mr. Herrera is in fact the father of [Ms. Villaneda's daughter] which he denied for most of the term during this particular action," adding, "And so my decisions have been because until there was determination of parentage in regards to [the daughter] there was no need to move this case to Oregon even though both children live in Oregon with their mother [and] have resided there for over the past year." CP at 295. A written order was entered thereafter.

Mr. Herrera filed a motion for revision of the commissioner's declination decision. Because the superior court judge could see that the commissioner's decision had changed over time, he requested a transcript of the January 26 hearing. After receiving and reviewing the transcript, he denied revision. In a letter ruling, the superior court agreed with the commissioner that the evidence of Mr. Herrera's paternity of the daughter "dramatically change[d] the analysis of the factors set forth in RCW 26.27.261(2). While they may have been neutral before parentage was established . . . they strongly support [Oregon] now." CP at 300.[4] An amended order declining jurisdiction and denying the motion for revision was filed in July 2016. Mr. Herrera timely appealed to this court.

After filing the appeal, Mr. Herrera filed motions in the superior court seeking to stay, amend or vacate the superior court's order declining jurisdiction. The superior court denied Mr. Herrera's motions, noting that the "court's overriding concern [was] stability for the child, so Oregon should proceed while the appeal in [Washington] goes forward." CP at 378. Mr. Herrera also moved this court for a stay of the Oregon proceedings, in response to which Ms. Villaneda asked this court to dismiss the appeal as moot because the litigation in Oregon was moving forward. Both motions were denied, although with leave for Ms. Villaneda to argue mootness to the panel.

---

[4] The first page of the superior court's decision misstates the relevant child's name. No argument is made on appeal from what was obviously a drafting error.

ANALYSIS

Washington and Oregon have both adopted the UCCJEA, which "arose out of a conference of states in an attempt to deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved." *In re Custody of A.C.*, 165 Wn.2d 568, 574, 200 P.3d 689 (2009) (footnote omitted) (citing UCCJEA prefatory note, 9 pt. 1A U.L.A. at 651 (1999); UCCJEA § 101 cmt., 9 pt. 1A U.L.A. at 657)). "It is, in a sense, a pact among states limiting the circumstances under which one court may modify the orders of another." *Id.* (citing UCCJEA prefatory note, 9 pt. 1A U.L.A. at 649-51).

It was undisputed below that the Washington and Oregon courts had made child custody determinations concerning the son and daughter, respectively, and that each state had exclusive, continuing jurisdiction over their respective determinations. *See* RCW 26.27.211(1). "Child custody determinations" include parenting plans and other orders providing for visitation with respect to a child. RCW 26.27.021(4). A court with exclusive, continuing jurisdiction may decline to exercise its jurisdiction if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. RCW 26.27.261(1).

Mr. Herrera assigns six errors to the superior court's order declining to exercise jurisdiction over parenting issues affecting the parties' son. All are rendered moot by

8

provisions of the WUCCJEA that generally require courts to accord full faith and credit to an order issued by another state consistent with chapter 26.27 RCW.

Under RCW 26.27.261(3), "If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state." The Benton County Superior Court entered such an order in July 2016. It denied Mr. Herrera's revision motion and affirmed Commissioner Schneider's decision declining jurisdiction, "conditioned upon [Ms. Villaneda] amending her petition in Oregon within 60 days of entry of this order, and taking whatever action is necessary under Oregon law to put the parenting plan relating to [the parties' son] at issue. When that is done this matter shall be dismissed." CP at 312-13. Upon evidence that Ms. Villaneda had noted up the parenting plan issues for decision in Oregon, the Benton County court dismissed the parenting issues raised by Mr. Herrera's petition.

RCW 26.27.531 provides, "An appeal may be taken from a final order in a proceeding under this article in accordance with expedited appellate procedures in other civil cases relating to minor children." And this court's authority to stay enforcement of a trial court decision "upon such terms as are just" applies. RAP 8.1(b)(3). Together, the statute and rules provide a means to arrest any apparent miscarriage of justice, at the same time avoiding delay where it appears unlikely any mistake was made.

9

Mr. Herrera moved this court for such a stay, which was evaluated by our commissioner under RAP 8.1(b)(3)'s criteria to "(i) consider whether the moving party can demonstrate that debatable issues are presented on appeal and (ii) compare the injury that would be suffered by the moving party if a stay were not imposed with the injury that would be suffered by the nonmoving party if a stay were imposed." Rejecting Mr. Herrera's arguments that he had demonstrated a debatable issue and demonstrated harm to him that outweighed the harm to Ms. Villaneda, our commissioner denied the motion.

Our record reveals that the Oregon court addressed parenting plan issues involving the parties' son on October 6, 2016, continued them to October 25, 2016, and resolved them by a supplemental judgment regarding custody and parenting time entered on October 25, 2016. RCW 26.27.521 provides:

> A court of this state shall accord full faith and credit to an order issued by another state and consistent with this chapter that enforces a child custody determination by a court of another state unless the order has been vacated, stayed, or modified by a court having jurisdiction to do so under Article 2.

Once the Benton County Superior Court dismissed the parenting plan issues raised by Mr. Herrera's petition, the Oregon court acted consistently with the UCCJEA in proceeding to resolve them.

"A case is moot if a court can no longer provide effective relief." *Blackmon v. Blackmon*, 155 Wn. App. 715, 719, 230 P.3d 233 (2010). "A final judgment in one state, rendered by a court with jurisdiction over the subject matter and parties governed by the

10

judgment, controls in other states to the same extent as in the state where it was rendered." *In re Parentage of Infant Child F*., 178 Wn. App. 1, 9, 313 P.3d 451 (2013). If giving a sister state's judgment full faith and credit means that there is no relief available in Washington, then the Washington proceeding is rendered moot. *Id.* at 7. The Oregon court's judgment renders this appeal moot.

Both parties request reasonable attorney fees on appeal. Mr. Herrera requests a fee award as prevailing party, but he does not prevail. Ms. Villaneda requests a fee award under RAP 18.9(a), on frivolous appeal grounds, but our commissioner's decision to refer the mootness issue to the panel gave Mr. Herrera reason to believe that his assignments of error might remain viable. *See* Am. Comm'r's Ruling, No. 34636-3-III at 5 n.1 (Wash. Ct. App. Dec. 1, 2016). In determining whether an appeal is frivolous we consider, among other principles, a party's right to appeal, that all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant, and that an appeal that is affirmed simply because the arguments are rejected is not frivolous. *Tiffany Family Trust Corp. v. City of Kent*, 155 Wn.2d 225, 241, 119 P.3d 325 (2005). We decline both parties' request for an award of reasonable attorney fees.

No. 34646-3-III
*Herrera v. Villaneda*

Affirmed.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, A.C.J.

12